535 F.Supp. 16 (1981)
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 134, AFL-CIO, Plaintiff,
v.
CHICAGO ZONE OF the MARKETING OPERATIONS OF the GENERAL ELECTRIC COMPANY, Defendant.
No. 81 C 1671.
United States District Court, N. D. Illinois, E. D.
November 10, 1981.
*17 *18 Marvin Gittler, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for plaintiff.
Richard H. Schnadig, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER
ASPEN, District Judge:
Plaintiff International Brotherhood of Electrical Workers, Local Union 134, AFL-CIO ("Union") brought this action to compel arbitration under a collective bargaining agreement of a dispute between the Union and the defendant employer, Chicago Zone of the Marketing Operations of the General Electric Company ("Company").[1] The case is presently before the Court on cross motions for summary judgment and on defendant's alternative motion for a stay of the proceedings. For the reasons set forth below, the Union's motion for summary judgment is granted and the Company's cross motion for summary judgment is denied. The Company's alternative motion for stay of proceedings is also denied.
On December 1, 1979, the parties entered into a collective bargaining agreement for a period of three years, to expire on November 30, 1982. In addition to setting forth the agreement of the parties as to wages, hours, and other conditions of employment, the contract included a recognition clause[2] describing the bargaining unit and an arbitration clause.[3]
In August, 1980, the Company hired approximately five employees to install "On-TV" antennae. In October of the same year, the Company laid off twenty-six employees; however, it retained the five newly-hired workers. The Union requested the Company to make its layoffs according to seniority and pursuant to the collective bargaining agreement.[4] When the Company *19 refused to comply, the Union filed grievances according to the terms of the collective bargaining agreement on behalf of four laid-off employees. The Company processed and on October 31, 1980, denied the grievances on the basis that the On-TV antennae installers were not and never had been members of the bargaining unit and therefore were not subject to the terms of the bargaining agreement. The Union requested arbitration of this dispute in January, 1981. To date, the Company has refused to arbitrate for the reasons stated above and on March 24, 1981, the Union filed this action to compel arbitration. On August 24, 1981, the Company filed a unit clarification petition with the National Labor Relations Board ("N.L.R.B."), pursuant to 29 U.S.C. § 159(c)(1), to determine the unit status of the five On-TV antennae installers hired in August, 1980. That petition is still pending before the N.L.R.B.
Since no material issues of fact are in dispute, the parties' cross motions for summary judgment are now ripe for disposition. The Seventh Circuit has noted that "[w]ith the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure whenever appropriate." Kirk v. Home Indemnity Co., 431 F.2d 554, 560 (7th Cir. 1970). Moreover, there are no questions of motive and intent involved in this case, questions which this circuit has observed are "particularly inappropriate for summary adjudication." Cedillo v. International Association of Bridge and Structural Iron Workers, Local Union No. 1, 603 F.2d 7, 11 (7th Cir. 1979).
The central issue in this case is whether the dispute arising from the layoffs of four Union employees is arbitrable pursuant to the terms of the collective bargaining agreement in effect between the parties.[5] The Union argues that the Company breached the collective bargaining agreement by refusing to submit to arbitration a dispute which falls well within the agreement's broad arbitration clause. The Company, on the other hand, puts forth several arguments in opposition to the request for arbitration. First, it argues that the arbitration clause does not cover grievances involving placement upon lay-off in non-bargaining unit positions, and the newly-hired On-TV antennae installers are not members of the bargaining unit. Second, the Company asserts that the subject matter of this dispute concerns representation of employees for purposes of collective bargaining, and as such, falls within the primary jurisdiction of the N.L.R.B. Finally, it alleges that the Union has not exhausted the grievance procedure as required by the collective bargaining agreement.

Substantive Arbitrability
This Court has noted that "[e]ver since the Steelworkers Trilogy,[6] it has been *20 recognized that national labor policy favors the use of arbitration as a means of resolving employer-employee disputes. Underlying this policy is the assumption that arbitration of labor problems provides the best hope for promoting industrial peace and avoiding the economic upheaval that results from strikes and employer lockouts."[7]Local 344 Leather Goods, Plastics & Novelty Workers' Union AFL-CIO v. The Singer Company Piecework Control Systems, 478 F.Supp. 441, 444 (7th Cir. 1979). One of the underlying objectives of the National Labor Relations laws is to promote collective bargaining agreements and to give substance to these agreements through the arbitration process. Carey v. Westinghouse Electric Corporation, 375 U.S. 261, 264, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). In an effort to facilitate this objective, the Supreme Court has fashioned several rules of construction for collective bargaining agreements and arbitration clauses.
A federal court has a limited role in suits to compel arbitration. "It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is covered by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." United Steelworkers of America v. American Manufacturing, 363 U.S. 564, 567-68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). The Supreme Court has recognized that collective bargaining agreements, and thus arbitration clauses, are consensual arrangements. However, the Court has held a dispute should not be considered non-arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960). "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail...." Id. at 584-85, 80 S.Ct. at 1353-54. Once the court determines that the parties to a collective bargaining agreement are subject to a broad arbitration clause extending to any differences between them, a claim that particular grievances are barred because a valid defense to enforcement of the collective bargaining agreement exists, is an arbitrable question under the agreement. International Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc., 406 U.S. 487, 492, 92 S.Ct. 1710, 32 L.Ed.2d 248. "By requiring the court to compel arbitration unless it can say with `positive assurance' that such was not intended by the parties to the agreement, the Supreme Court has sought to ensure that federal courts will not take it upon themselves to deny arbitration because of their own view as to the merits of the dispute."[8]Local 344 Leather Goods, Plastics & Novelty Workers Union AFL-CIO v. The Singer Company Piecework Control Systems, 478 F.Supp. 441, 445 (7th Cir. 1979).
There is little question that the parties to the instant action are subject to a collective bargaining agreement containing an arbitration clause. This clause states that arbitration should be utilized to resolve "any controversy or grievance involving the meaning of application of any of the provisions of this agreement." Further, it is undisputed that the parties are bound by the seniority provisions within the agreement. Therefore, the Union's allegation that the Company violated the agreement by laying off four employees out of seniority is within the scope of the arbitration *21 clause. The Court rejects the Company's contention that the controversy is purely representational in nature. Bargaining unit status is to be determined by construing the Union recognition clause of the collective bargaining agreement. This is an arbitrable duty pursuant to the arbitration clause. In sum, the Court cannot say with "positive assurance" that this controversy should not be resolved through the arbitration processes and thus this Court must compel arbitration.

Primary Jurisdiction
The Company also argues that the subject matter of this dispute concerns representation of employees for collective bargaining, and as such, falls within the primary jurisdiction of the N.L.R.B. Guided by this belief, the Company has filed a unit clarification petition with the N.L.R.B. in an effort to resolve the dispute at issue. However, the Supreme Court has held to the contrary. In light of the strong presumption of arbitrability, the existence of a possible remedy with the N.L.R.B. does not bar suit to enforce the collective bargaining agreement. Carey v. Westinghouse Electric Corporation, 375 U.S. 261, 268, 84 S.Ct. 401, 407, 11 L.Ed.2d 320 (1964).[9] In fact, if arbitration of a dispute regarding bargaining unit status takes place before the dispute reaches the N.L.R.B., "the Board shows deference to the arbitral award, provided the procedure was a fair one and the results were not repugnant to the Act." Id. at 270-71, 84 S.Ct. at 408. Additionally, even if the grievance "is in form a representation problem, in substance it may involve problems of seniority when layoffs occur.... If that is true, there is work for the arbiter whatever the Board may decide." Id. at 269-70, 84 S.Ct. at 407-408.
The Company cites two Seventh Circuit cases in support of the proposition that N.L.R.B. decisions take precedence over arbitration awards: Local 7-210, Oil, Chemical and Atomic Workers, International Union, AFL-CIO v. Union Tank Car Company, 475 F.2d 194 (7th Cir. 1973); Smith Steel Workers v. A. O. Smith Corporation, 420 F.2d 1 (7th Cir. 1969). However, in both of these opinions, the Board had already issued a decision which conflicted with the arbitrator's award, or there was a possibility that it would conflict if arbitration were compelled. The Union, in the case at bar, filed this action to compel arbitration prior to the Company's filing of the unit clarification petition with the Board. This action does not involve the question of whether a future decision by the N.L.R.B. will take supremacy over a future and possibly conflicting arbitration award. Rather, this Court must decide if arbitration itself is appropriate to resolve the controversy. Due to the finding that the issue was arbitrable in the first instance, the existence of a possible remedy with the N.L.R.B. does not bar a suit to compel that arbitration. International Union v. E-Systems, 632 F.2d 487, 490 (5th Cir. 1981).[10]

Procedural Arbitrability
The Company also alleges that the Union has not exhausted the grievance procedure as required by the collective bargaining agreement and thus the petition to compel arbitration should be denied. In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964), however, the Supreme Court held that "once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, `procedural' questions which grow out of the dispute and bear on its final disposition *22 should be left to the arbitrator." The Wiley court expressed the concern that matters of procedure often overlap with those of substance; therefore, a denial of a petition to arbitrate on procedural grounds in fact might operate sub silentio as a decision on the merits of the dispute. The Company denied the grievances filed in behalf of the four Union employees allegedly laid off out of seniority and refused to take part in any further grievance or arbitration procedure as mandated by the collective bargaining agreement.[11] Therefore, this procedural argument is neither supported by the law nor the undisputed facts of the case.

Stay of Proceedings
Finally, the Company has requested that even if the Court finds as a matter of law that arbitration should be compelled, it should stay proceedings until the Board has resolved the bargaining unit status of the five newly-hired employees. A motion for a stay is directed to the Court's discretion, and the power to order a stay is incidental to the power inherent in every court to control the docket of cases before it in the interest of time and economy for parties, counsel, and the court itself. Landis v. North American Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936). In making its determination as to the appropriateness of a stay, the Court is guided by both practical and legal considerations. In the instant case, it is this Court's conclusion that a stay should not issue.
While it is true that the Court of Appeals for this Circuit has upheld the district court's refusal to compel arbitration where the Board had issued a decision on the very matter which the union sought to arbitrate, Smith Steel Workers v. A. O. Smith Co., 420 F.2d 1, 7 (7th Cir. 1969), it does not follow that this Court should stay proceedings until the Board has ruled on the Company's unit clarification petition. There are practical reasons why arbitration should proceed. The arbitrator's decision might prove to be consistent with the subsequent ruling of the NLRB. Expedition of remedies such as reinstatement of the laid-off employees and back pay would inure to the benefit both of these employees and the Company. In addition, by proceeding with arbitration, the Court lessens the danger that an employer might utilize dilatory tactics to evade its obligations under a collective bargaining agreement.
There are also sound legal reasons for proceeding with arbitration despite the pending unit clarification petition before the NLRB. If a stay were appropriate because of the pending petition, then a party opposed to arbitration could ask a court to stay proceedings pending an NLRB decision, then avoid arbitration altogether after the Board's ruling was issued under the rationale of Smith Steel Workers, supra.[12] While avoiding arbitration in this fashion might often conserve resources and prevent needless duplication in light of the supremacy of the Board's decision over that of an arbitrator, such a result would also be inimical to the strong national policy favoring *23 arbitration and the Supreme Court's holding in Carey, supra.[13]
Accordingly, the petition to compel arbitration is granted. The cross motion for summary judgment to dismiss and the alternative motion to stay the proceedings are denied. It is so ordered.
NOTES
[1] Jurisdiction is vested in this Court by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).
[2] Article IUnion Recognition provides in relevant part:

The Company agrees to recognize the union as the sole collective bargaining agent in all matters pertaining to wages, hours and other conditions of employment for all appliance, television and stereo console phonograph service technicians of the company's Chicago offices located at 5600 West 73rd Street, 10 King Street and 837-89 Westmore Avenue, Chicago, Illinois, who are engaged in the installation, repair and servicing of General Electric major household appliances, television and stereo console phonographs and assorted apparatus and antennas, but excluding all other employees, including without limitation office clericals, outside salesmen, parts employees and all professional employees, watchmen, guards and supervisory employees as defined in the Act.
* * * * * *
[3] Article XIIArbitration provides in relevant part:

In the event that there arises between the company and the union any controversy or grievance involving the meaning or application of any of the provisions of this agreement, which cannot be satisfactorily settled in accordance with the grievance procedure, and provided that such controversy or grievance does not in any way involve the provisions of section Z of this Article or the provisions of Article XIX (Retirement of Employees) hereof, such controversy or grievance may be submitted by either party to arbitration....
* * * * * *
[4] Article XVIISeniority provides in relevant part:

1. An employee's continuous service in occupations within the collective bargaining unit as defined in Article I (Union Recognition) of this agreement shall be the basis for determining his seniority for purposes of layoff and recall.
* * * * * *
4. Seniority will not be accrued to an employee until he has worked ninety (90) days during which period he will be deemed a provisional employee.
Article XVIILayoff and Recall provides in relevant part:
1. Seniority will be the basis on which an employee will be given preference in cases of reducing forces due to lack of work in the bargaining unit and in cases of increasing forces after such reduction, provided that he is qualified to do the available work, and provided further that employees who have worked less than ninety (90) days in the bargaining unit shall have no such preference in any such event.
[5] The Company also claims that even if the dispute is arbitrable, the Court should grant a stay of this proceeding pending the outcome of its unit clarification petition filed with the N.L. R.B. in August, 1981, due to the fact that the N.L.R.B.'s decision will take precedence over any unit decision arrived at through arbitration. Therefore, the argument continues, in the interest of efficiency, the proceedings should be stayed because the unit status of these employees is determinative in the dispute to be submitted to arbitration. This argument is dealt with infra, pp. 21-23.
[6] United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
[7] United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. at 578, 80 S.Ct. at 1351.
[8] This is precisely what happened in American Manufacturing Company. There, the district court had denied a petition to compel arbitration on the ground that the grievance was "a frivolous patently baseless one," 264 F.2d 624, 628 (6th Cir. 1959). It was this kind of implicit determination of the merits of labor disputes that the Court believed should be avoided whenever arbitration was a viable alternative.
[9] This case involved a controversy as to which of two certified unions should represent employees doing certain work. The Court held that, whether the dispute was over the work assignment or the representation of the employees, arbitration would further the policies of the National Labor Relations Act.
[10] In the event that the controversy is before the Board and an arbitrator at the same time, the Board will, in some cases, leave the decision to the arbitration process. Lodge 1327, International Association of Machinists and Aerospace Workers, AFL-CIO v. Frazer & Johnston Company, 454 F.2d 88, 91 (9th Cir. 1971).
[11] The grievance and arbitration procedures spelled out in the collective bargaining agreement between the company and the union provide for a four-step process culminating in binding arbitration if no "satisfactory settlement" is reached prior to that time. The undisputed facts set forth by the parties reveal that no settlement has been reached and the process was terminated at the company's insistence following the initial grievance step.
[12] The Court recognizes the line of cases approving the stays of § 301 suits to enforce arbitration awards when the same dispute is pending before the NLRB. See, e.g. United Association of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry, Local 525 v. Foley, 380 F.2d 474 (9th Cir. 1967) (per curiam); McGuire v. Humble Oil, 355 F.2d 352 (2d Cir. 1966); Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 495 F.Supp. 619 (M.D.N.C.1980). However, in the case at bar, the Union's suit is to compel arbitration and not to enforce an arbitration award. Also the action was brought prior to the Company's filing of the unit clarification petition and thus to stay this action would be tantamount to granting the Board exclusive jurisdiction of the issue. That result is neither supported by the law, see discussion at pp. 20 22, supra, nor the terms of the collective bargaining agreement.
[13] See discussion at pp. 19-21, supra.