LOCAL 703, INTERNATIONAL BROTH-
ERHOOD of TEAMSTERS,
Plaintiff-Appellee,

v.

KENNICOTT BROS. COMPANY,
Defendant-Appellant.

No. 80–2267.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1981.

Decided Feb. 10, 1982.*

Opinion Jan. 23, 1984.

John S. Schauer, Chicago, Ill., for defend-
ant-appellant.

William F. Lennon, Chicago, Ill., for
plaintiff-appellee.

Before SWYGERT and FAIRCHILD,
Senior Circuit Judges, and JAMESON, Sen-
ior District Judge.**

FAIRCHILD, Senior Circuit Judge.

This controversy concerns an assertion by
appellee Local 703, International Brother-
hood of Teamsters (the "Union"), that the
job of bouquet makers is covered by the col-
lective bargaining agreement (the "Agree-
ment") between the Union and appellant
Kennicott Brothers Company ("Kennicott"),
a wholesale florist located in Chicago. The

---

* This appeal was originally decided by unreport-
ed order on February 10, 1982. *See* Circuit
Rule 35. The panel has subsequently decided
to issue the decision as an opinion.

** Senior District Judge William J. Jameson of
the District of Montana sitting by designation.

Union contends that bouquet makers are within the job categories of "[flower] packers, wrappers and stockmen," included in the Agreement. Kennicott, on the other hand, argues that bouquet makers are new to the company, and that they never have been, and were never intended to be, included in the Agreement.

The only issue before this court, however, is whether the parties' dispute should be subject to arbitration. The district court held that it was, and granted the Union's motion for summary judgment. We affirm.[1]

## I.

Kennicott has been party to the Agreement with the Union for over thirty years.[2] The Agreement establishes "specific rules and regulations to govern hours of employment, wage scales and working conditions of head packers, wrappers and stockmen, general warehouse help and drivers of trucks." Article II of the *Wholesale Cut Flower Labor Agreement,* attached as Exhibit A to the affidavit of Harrison Kennicott III, dated October 26, 1979. It contains an arbitration clause applying to "all disputes and grievances arising out of this Agreement...." Article III.

The Kennicott employees holding the jobs of head packers, wrappers, stockmen, general warehouse help and drivers of trucks numbered approximately 25 in 1975. The packers and wrappers wrap cut flowers and pack them into cartons for delivery to retail florists in the Chicago area. The Kennicott employees not covered by the Agreement include the clerical staff, salesmen, floral supply workers, managers and supervisors, and officers.

According to Kennicott, it began to employ persons as bouquet makers in 1975.

The bouquet makers work in a large room in the basement of the Kennicott building. They fashion cut flowers into bouquets for delivery to the retail customers. The truck drivers are in and out of the basement frequently to pick up the buckets of bouquets.

Kennicott alleges that the Union attempted to include bouquet makers by title in the Agreement during 1978–79 negotiations. The Union disputes this, and alleges that Kennicott sought to have the bouquet makers listed among the employees specifically excluded from the Agreement. Whichever version is correct, the Union first requested arbitration of the issue in March, 1979. Kennicott refused to arbitrate. It contended that since bouquet makers were not included in the collective bargaining agreement, the dispute did not "aris[e] out of this Agreement" and was therefore not subject to arbitration. The Union then brought suit, seeking an order compelling arbitration. The district court, relying on the strong presumption of arbitrability, *Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 377, 94 S.Ct. 629, 636, 38 L.Ed.2d 583 (1974), held that the dispute was subject to arbitration. We agree.

## II.

On appeal, Kennicott argues that the numerous affidavits it submitted to the district court in support of its own motion for summary judgment and in response to the Union's motion raised "genuine issue[s] for trial." As the Union submitted nothing to refute the evidence proffered by Kennicott, it argues that the district court was precluded by Rule 56(e) of the Federal Rules of Civil Procedure from granting summary judgment for the Union.[3]

1. Kennicott moved, in this court, for an injunction pending appeal. For the reasons herein stated, that motion is denied.

2. The Union's full name is: "Produce, Fresh & Frozen Fruits & Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape & Allied Employees, Drivers, Chauffeurs, Warehousemen & Helpers Union, Chicago and Vicin-

ity, Illinois, Local 703, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, and Warehousemen & Helpers of America."

3. Rule 56(e) provides, in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere

"The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Id.* at 374, 94 S.Ct. at 635. Thus, for the affidavits to raise a genuine issue for trial, they must provide evidence tending, on some theory, to show either that the Agreement is invalid or the parties intended to exclude an issue like the present one from the arbitration requirement. *See Haig Berberian, Inc. v. Cannery Warehousemen,* 535 F.2d 496, 499 (9th Cir. 1976).

None of the affidavits submitted, however, question the existence or validity of the Agreement. Nor do they dispute the provision in the Agreement that "[a]ll disputes and grievances arising out of this Agreement shall be ... submitted to a Board of Arbitration." Article III. Rather, the affidavits of Mr. Kennicott and several bouquet makers simply state that they never considered bouquet makers to be members of the Union or included in the Agreement. Kennicott argues that this is evidence that there exists no agreement to arbitrate the dispute.

■ In addition to being circular, the affidavits fail to raise any factual issues pertaining to the existence of the Agreement to arbitrate. If anything, the assertions made in the affidavits go to the underlying issues in this dispute—whether bouquet makers are wrappers, packers, and stockmen or general warehouse help. That issue, however, is not before the court. The only question for our decision is whether the arbitration provision of the Agreement mandates arbitration of this dispute. The answer turns on the meaning of the phrase "[a]ll disputes and grievances *arising out of* this Agreement...." That is a question of

law, and one appropriately decided on a motion for summary judgment. *See International Union of Operating Engineers, Local Union No. 139 v. Carl A. Morse,* 529 F.2d 574, 581 (7th Cir.1976).

## III.

The arbitration clause at issue purports to cover "all disputes and grievances arising out of this Agreement." Nothing in the Agreement limits the duty to arbitrate or further defines "all disputes and grievances."

■ In this case, the Union contends that bouquet makers are "packers, wrappers, stockmen or general warehouse help" and are thus covered by the Agreement. Kennicott contends that this provision of the Agreement does not include bouquet makers. The disagreement turns on the meaning of an integral clause of the contract: does the quoted provision include or exclude "bouquet makers"? Arbitration must therefore be ordered because "the claim itself purports to be based on an interpretation of the contract." *Haig Berberian, Inc. v. Cannery Warehousemen,* 535 F.2d at 499 (*citing American Manufacturing Company,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)).[4] Our opinion as to whether the construction of the clause is susceptible to the interpretation urged by the Union is irrelevant, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53.

■ Kennicott urges that since the dispute ultimately concerns the issue of repre-

---

allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

4. In *Haig Berberian* the collective bargaining agreement required arbitration of "any difference or issue ... arising out of the application or interpretation of any provision of this Agreement," a provision similar to the one at issue in

the present case. The agreement then covered "[a]ll work ... performed ... in companies' plants at Modesto, California....". The union sought arbitration to determine if the new employees at the company's new plant outside the Modesto city limits were covered by the agreement. The company contended they were not, because the agreement said *at* Modesto. The Ninth Circuit held that the dispute was arbitrable, as it was a dispute as to the application or interpretation of the agreement. *Id.* at 499.

sentation of the bouquet makers by the Union, it is exempted from arbitration. But the representational nature of the question alone is an insufficient basis upon which to deny arbitration. *International Union of Operating Engineers v. Sid Richardson Carbon Company,* 471 F.2d 1175, 1177 (5th Cir.1973).[5] Exemption from arbitration depends on the contract itself. Here the contract provides for the arbitration of "all disputes arising out of . . . ."[6] There comes into play the presumption favoring arbitrability. *Gateway Coal Company v. United Mine Workers,* 414 U.S. at 377, 94 S.Ct. at 636.

We are not to consider material asserted by Kennicott, such as the historic treatment of bouquet makers and the collective bargaining history between the parties. These things are factual and go to the merits of the dispute, decision of which will be for the arbitrator. As the Supreme Court has stated:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.

*United Steelworkers of America v. American Manufacturing Company,* 363 U.S. at 567–68, 80 S.Ct. at 1346–47. *See Mobil Oil Corporation v. Local 8–766, Oil, Chemical & Atomic Workers International Union,* 600 F.2d 322, 329 (1st Cir.1979).

The order of the district court is therefore AFFIRMED.

---

**5.** There, the court held that an arbitration clause pertaining only to "interpretation or performance of this Contract" did not cover a dispute over which unit of the union local represented the employees at a particular plant. *See Retail Clerks Local 588, etc. v. NLRB,* 565 F.2d 769, 777–78 (D.C.Cir.1977).

**6.** Moreover, the dispute at issue here revolves more around the job classification of certain production workers than it does over what union will represent them, as did the dispute in *Sid Richardson.*