COMMUNICATIONS WORKERS OF AMERICA and its Local 5090, Plaintiff-Appellee,

v.

WESTERN ELECTRIC COMPANY, INC.,* Defendant-Appellant.

No. 83–3236.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1984.

Decided Dec. 26, 1984.

Rehearing and Rehearing En Banc Denied March 8, 1985.

* Following the inception of this litigation Western Electric changed its name to AT & T Technologies, Inc.

Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff-appellee.

Charles C. Jackson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellant.

Before WOOD, Circuit Judge, SWY-GERT, Senior Circuit Judge, and GRANT, Senior District Judge.**

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal raises yet again, but in a different context, the question of the proper role for a court to play in deciding whether a dispute between an employee and employer is arbitrable under the terms of a collective bargaining agreement.

## I.

Defendant-Appellant, Western Electric (the "Company"), appeals from a district court order compelling it to arbitrate, under a collective bargaining agreement (the "Agreement"), a grievance filed by Plaintiff-Appellee, Communications Workers of America and its Local 5090 (the "Union"), challenging the September 25, 1981 layoff of 79 Illinois-based installers.

On September 17, 1981, the Union grieved the Company's announced intention to lay off 79 installers from its Chicago base location. The Union asserted that there was no lack of work at the Chicago location and that the layoff was therefore not justified under the terms of the Agreement. Specifically, the Union claimed that under the "Adjustments to the Working Force" clause (Article 20)[1] the Company can lay off only employees assigned to the base location where the lack of work exists. Notwithstanding the grievance, the Company laid off the Chicago employees on September 25, 1981 and soon thereafter transferred approximately 80 employees from Indiana and Wisconsin base locations to Chicago.

The Union then demanded arbitration of the dispute pursuant to the Arbitration clause of the Agreement (Article 8).[2] The Company refused to arbitrate, claiming that the "Management Functions" clause (Article 9)[3] gives it the unilateral right to lay off employees when it determines a lack of work exists in its facilities so long

---

** The Honorable Robert A. Grant of the Northern District of Indiana, sitting by designation.

1. Art. 20 [Adjustments to the Working Force]: "3. When lack of work necessitates Layoff, Employees shall be Laid-Off in accordance with Term of Employment and by Layoff groups as set forth in the following: [subparagraphs stating order of layoff]."

2. Art. 8 [Arbitration]: "If the National [Union] and the Company fail to settle by negotiation any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder, such differences shall (provided that such dispute is not excluded from arbitration by other provisions of this contract, and provided that the grievance proce-

dures as to such dispute have been exhausted) be referred upon written demand of either party to an impartial arbitrator."

3. Art. 9 [Management Functions]: "The Union recognizes that the rights of the Company (subject to the limitations contained in the provisions of this Contract, but otherwise not subject to the provisions of the arbitration clause) to exercise the functions of managing the business which involve, among other things, the hiring and placement of Employees, the termination of employment, the assignment of work, the determination of methods and equipment to be used, and the control of the conduct of the work."

as it lays them off in the order prescribed by Article 20 of the Agreement.

The Union then sought the intervention of a court to compel arbitration pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1982). The parties submitted several affidavits and took several depositions concerning the parties' intention regarding arbitrability of the dispute. Without reference to this parol evidence the district court found that the Union's interpretation of the Arbitration clause and other pertinent provisions was "arguable" and that there was no "express provision excluding a particular grievance from arbitration" or "forceful evidence of a purpose to exclude the claim from arbitration." Accordingly the court ordered arbitration of the arbitrability issue.[4]

We affirm.

## II.

The Company argues on appeal that the district court erred in giving the arbitrability issue to the arbitrator rather than deciding the issue itself.

In support of its argument the Company quotes the following language from *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960):

> § 301 of the Labor Management Relations Act ... assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.

The Company also quotes from *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) as follows: " 'Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of

the contract entered into by the parties.' " *Id.* at 546–47, 84 S.Ct. at 912–13 (quoting *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962)). Finally, the Company quotes the following language from this circuit's *Associated Milk Dealers, Inc. v. Milk Drivers Union, Local 753*, 422 F.2d 546 (7th Cir.1970) decision: "The district court must determine whether the dispute between the parties is arbitrable ... unless the parties voluntarily submit arbitrability to the arbitrator." *Id.* at 550 (citing *Warrior & Gulf*).

■ The above quoted language establishes the general rule that the arbitrability issue is for the courts to decide unless otherwise stipulated by the parties. However, the holdings and other language contained in these and subsequent cases suggest that the rule is subject to an important exception: where deciding arbitrability would entangle a court in the construction of substantive provisions of a labor agreement. *See* Smith & Jones, *The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law*, 63 Mich.L. Rev. 751, 784 (1964) (arguing that Supreme Court cases up through 1964 suggest this exception to the rule that a court must decide arbitrability). In *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 585, 80 S.Ct. at 1354, the Court admonished courts to "view with suspicion an attempt to persuade [them] to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." In a companion case, *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the Court explained its admonition against becoming involved in the merits: "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a

4. Although there is some ambiguity as to whether the district court ordered arbitration of the dispute itself, or arbitration of the arbitrability issue, we think the latter is the fairer reading of the order.

function which under that regime is entrusted to the arbitration tribunal." *Id.* at 569, 80 S.Ct. at 1347.

█ This circuit has heeded the *Warrior & Gulf* admonition. In *Associated Milk Dealers,* in the course of remanding the case to the district court for a more detailed consideration and definitive decision of the arbitrability issue, this court took pains to distinguish between the case being considered there, where deciding arbitrability is "limited" and "particular," and one where deciding arbitrability requires the court "to interpret a broad exclusionary clause (*e.g.,* concerning management's right to contract out or to discharge employees), which inevitably involves consideration of the merits of the dispute." *Id.* at 552. In the former a court should decide arbitrability; in the latter it should not.

Several cases in this circuit have adhered to the *Associated Milk Dealers* distinction. In *Local 156, United Packinghouse, Food and Allied Workers v. Du Quoin Packing Co.,* 337 F.2d 419 (7th Cir.1964), we ordered arbitration, under a standard arbitration clause, of Union claims regarding reinstatement and transfer of employees which "arguably ..., not necessarily as conclusively, [was] within coverage" of the arbitration clause. We refused to decide the arbitrability issue definitively because resolution would have involved delving into the merits of the claim. Similarly, in *Local 703, International Brotherhood of Teamsters v. Kennicott Bros.,* 725 F.2d 1088 (7th Cir. 1984), we ordered arbitration without definitively deciding arbitrability where the Union's "claim itself purport[ed] to be based on an interpretation of an integral clause of the contract, vis, whether 'bouquet makers' are 'packers, wrappers, stockmen or general warehouse help'" within the terms of the Agreement. *See also Local 344 Leather Goods, Plastics & Novelty Workers' Union v. Singer,* 478 F.Supp. 441, 444 n. 6 (N.D.Ill.1979) ("[T]his Court's task is not to discover whether the parties intended to submit this question to arbitration but rather, whether the collective bargaining agreement is susceptible of an interpretation

that the dispute is arbitrable."); *International Brotherhood of Electrical Workers, Local 134 v. Chicago Zone of the Marketing Operations of the General Electric Co.,* 535 F.Supp. 16 (N.D.Ill.1981) (to similar effect); *Cf. Randall v. Lodge No. 1076, International Association,* 648 F.2d 462 (7th Cir.1981) (court should not allow a party to use issues of the arbitrator's authority as a ruse to obtain judicial review on the merits of an arbitral award).

Although the exception discussed above is difficult to reconcile with the Supreme Court's discussion of a court's duty to decide arbitrability in *Wiley* (quoted above), that discussion was dicta. The question in *Wiley* was whether the arbitration rights under the collective bargaining agreement survived a corporate merger. Deciding that issue did not involve consideration of the merits of the grievances which concerned employee "vested" rights such as seniority status, severance pay, etc. Moreover, to the extent the Court decided the issue in *Wiley,* it reopened the issue in *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 255 n. 8, 97 S.Ct. 1067, 1074 n. 8, 51 L.Ed.2d 300 (1977), where it expressly reserved the issue of an arbitrator's authority to consider arbitrability following referral from a court under section 301 of the Labor Management Relations Act.

█ The weight of the authority supports the rule that a court should compel arbitration of the arbitrability issue where the collective bargaining agreement contains a standard arbitration clause, the parties have not clearly excluded the arbitrability issue from arbitration, and deciding the issue would entangle the court in interpretation of substantive provisions of the collective bargaining agreement and thereby involve consideration of the merits of the dispute.

In this case Article 8 is a standard arbitration clause, providing for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder." Furthermore, there is no clear, unambigu-

ous exclusion from arbitration of terminations predicated by a lack of work determination. Rather, there are colorable arguments both for and against exclusion, both of which require interpretations of less than clear *substantive* provisions. The Company claims that Article 9, the "Management Functions" clause, excludes from arbitration its decision to terminate employees. The Union counters that Article 20, the "Adjustments to the Working Force" clause, limits the "Management Functions" clause: that it makes arbitrable the issue of whether there really is a lack of work predicating layoffs at the base location where the layoffs occur and that the Company breached Article 20 of the Agreement when it laid off employees from a base location where no lack of work existed. The Company retorts that Article 20 only sets forth the order of layoffs, not the circumstances under which layoffs can occur. Clearly to decide whether this dispute is arbitrable would require a court to interpret not only the Arbitration clause (a task clearly within its province), but also several substantive provisions of the Agreement: the "Management Functions" clause and the "Adjustments to the Working Force" clause. Since the Agreement contains a standard arbitration clause, the parties have not clearly excluded the arbitrability issue from arbitration, and to decide arbitrability would require interpretation of substantive provisions of the Agreement, we decline the invitation to decide arbitrability.

Since determining arbitrability would enmesh a court in the merits of this dispute, the district court properly avoided consideration of the extensive parol evidence regarding bargaining history and prior litigation between the parties. This evidence goes to the merits of the dispute, decision of which is for the arbitrator. *See Local 703, International Brotherhood of Teamsters v. Kennicot Bros.*, 725 F.2d at 1091.

The order of the district court is therefore AFFIRMED; the Company is ordered to arbitrate the arbitrability issue.