**PHOENIX MUTUAL LIFE INSURANCE COMPANY, Plaintiff,**

v.

**NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, et al., Defendants.**

**No. 86 C 7134.**

United States District Court, N.D. Illinois, E.D.

Feb. 20, 1987.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Phoenix Mutual Life Insurance Company ("Phoenix") and North American Company for Life and Health Insurance ("North American") are parties to several reinsurance treaties entered into between 1979 and 1984 (under each of which Phoenix contracted to act as reinsurer of life insurance policies written by North American). Phoenix also contracted for the reinsurance of policies issued by North American Company for Life and Health Insurance of New York ("NANY") under a separate reinsurance treaty effective February 1, 1983. Phoenix has sued here (in part) to compel arbitration of the question whether an Atlanta law firm, Kilpatrick & Cody, is disqualified by conflict-of-interest principles from representing North American

---

and NANY (collectively "North American Companies") in substantive disputes that have arisen between the parties.[1]

North American Companies now move to strike that aspect of Phoenix's arbitration claim from Phoenix's Amended Complaint (the "Complaint"). For the reasons stated in this memorandum opinion and order, the motion is granted.

### Arbitration under the Treaties

All the treaties between the parties deal broadly with the contractual aspects of re-insurance—describing when Phoenix will reinsure policies, the price and terms of reinsurance, the handling of insurance claims and a host of other matters—and also prescribe the means for resolution of disputes between the parties. In that latter respect, each treaty contains a broad arbitration clause expressed in much the same terms. In all the treaties except the 1980 North American treaty (which is not materially different as to this language), the specific sentence providing for arbitration reads:

> All disputes and differences upon which an amicable understanding cannot be reached are to be decided by arbitration.[2]

There is, to be sure, some variance among the treaties in the language contiguous to that sentence, describing various matters relevant to the arbitration process. This opinion will advert to those non-critical language differences later.

### Operative Legal Standards

At least where questions of arbitrability are interlaced with interpretation of the substantive provisions of a contract (so that the same kind of expertise required to arbitrate the substantive disputes could also help in determining the scope of arbitration), there is a good deal to be said for allowing the arbitrator to decide the issue of arbitrability as well as the substantive

issues requiring arbitration. That was the thrust of our Court of Appeals' decision in *Communications Workers of America v. Western Electric Co.*, 751 F.2d 203, 206–07 (7th Cir.1984). But that decision was reversed by a unanimous Supreme Court, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), so it is now clearly established that the scope of intended arbitrability is a question left to courts rather than arbitrators.

Consistently with the principles laid down in the *Steelworkers Trilogy* (see *United Steelworkers of America v. Gulf Navigation Co.*, 363 U.S. 574, 582–83, 584–85, 80 S.Ct. 1347, 1352–53, 1353–54, 4 L.Ed.2d 1409 (1960)), the courts continue to hold that a broad-gauge arbitration clause should cause any arguable questions as to arbitrability vel non to be resolved in favor of arbitration. As *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) put it:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

In like manner our Court of Appeals said in *Schacht v. Beacon Insurance Co.*, 742 F.2d 386, 391 (7th Cir.1984):

> Under the dictates of the *Steelworkers* decision, 363 U.S. at 583, 80 S.Ct. at 1353, our conclusion that the arbitration clause arguably covers the issues herein involved terminates our inquiry.

In sum, this Court's approach to the current question must tilt toward arbitrability—but this Court cannot, because of that principle, abdicate its responsibility to read and interpret the insurance treaties.

---

1. That disqualification question is also pending before the United States District Court for the Northern District of Georgia in an action seeking declaratory, injunctive and other relief, brought by both North American and Kilpatrick & Cody (the latter is not a party here).

2. [Footnote by this Court] Indeed, though there are some other language differences among the arbitration provisions of the several treaties, their thrust is really the same. Ex. A to this opinion reproduces the arbitration provisions of each treaty.

### Application of the Standards

Phoenix advances a somewhat deceptive syllogism to support its contention here:

1. Each reinsurance treaty specifically says "all disputes and differences" or "all differences" are to "be decided by arbitration."

2. Phoenix and North American Companies "differ" or "dispute" with each other as to whether Kilpatrick & Cody can represent North American Companies.

3. Therefore whether Kilpatrick & Cody can in fact provide such representation must be decided by arbitration (and hence not by the District Court in Georgia, where the other suit referred to earlier is now pending).

Though that syllogistic statement is impeccable in Aristotelian terms, its flaw lies in the oversimplification of language.

That may best be illustrated by posing a different factual situation (deliberately farther afield than the one before this Court). Assume a Phoenix-owned vehicle and a North-American-owned vehicle were involved in a collision at an intersection, generating a "difference" or "dispute" as to which company was at fault. Despite the all-encompassing language of the provisions quoted earlier (which are certainly broad enough *literally* to cover that controversy), no one would claim seriously that the parties had to arbitrate the liability and damages issues of that "difference" or "dispute," rather than calling on the judicial system for that purpose.

■ Of course the question here is much closer to the general subject of reinsurance treaties than the hypothetical example in the preceding paragraph. But that is not the point. What *is* the point taught by the example is that the language of the treaties cannot be read in isolation, but must be looked at in the context in which the language appears. Not all "disputes" and "differences" in the world can fairly be viewed as arbitrable because of the treaties' mandate, but only those relating to the parties' duties to each other under the reinsurance treaties themselves. Essentially the parties' intention as to the scope of arbitrability must be read as though the words "arising hereunder" or language of comparable import, even though not literally appearing in the reinsurance treaties, were there—that is, as though the treaties read:

All disputes and differences arising hereunder upon which an amicable understanding cannot be reached are to be decided by arbitration.

That is really the force of the various treaty provisions besides the single sentence just mentioned—provisions that describe the persons to be called upon as arbitrators and the concepts they are to apply to their task.

It must be remembered that what is at issue on the current motion is not at all a substantive "difference" or "dispute" as to the reinsurance itself. Instead the matter on which the parties part company is a wholly tangential question: what lawyers should be entitled to represent North American Companies in the resolution of their substantive "differences" or "disputes" with Phoenix, whether through arbitration or litigation. Nothing in that tangential question calls into play any "customs and usages of the business of reinsurance," or "the usual business and reinsurance practices rather than strict technicalities," or "the standpoint of practical business and equity rather than that of the strict law"—the standards the treaties call on the arbitrators to apply. Nor does anything in that tangential question call for the special expertise that caused the parties to specify their arbitrators should be "executive officers, preferably knowledgeable in reinsurance matters, of life insurance companies...."

This Court does not go so far as North American Companies would urge: It does not hold an agreement to arbitrate questions of legal representation or conflicts of interest would be unenforceable in public policy terms, as suggested by *In re "Agent Orange" Product Liability Litigation,* 611 F.Supp. 1452, 1457–58 (E.D.N.Y.1985). Instead this Court holds the *existence* or *nonexistence* of an agreement to arbitrate such questions is a matter of construction of the contract between the parties (for

which purpose, of course, the kinds of principles articulated by Chief Judge Weinstein in *Agent Orange* might be relevant).

Indeed, Phoenix does not deal at all with one obvious and important clue to the intention of the contracting parties: the construction the parties themselves have placed on their contracts.[3] When Phoenix first raised the question of Kilpatrick & Cody's ability to represent North American, it sent North American a letter proposal to arbitrate that question (Ex. B to this opinion), but:

> 1. Phoenix's proposal called for a single arbitrator limited to the conflict-of-interest subject, adding "The arbitrator will not have any authority to determine any other matter or dispute." By contrast, each reinsurance treaty calls for a *three*-arbitrator panel to act in resolving *all* "differences" or "disputes."

> 2. Phoenix's proposal contained a host of other differences from the arbitration structure under the treaties. Most significantly it said:

>> The individuals nominated by each company [as potential arbitrators] will be knowledgeable in the area of legal ethics.

> That contrasts sharply with the provisions of the reinsurance treaties that the arbitrators "must be executive officers ... of life insurance companies" and were to be "preferably knowledgeable in reinsurance matters...."

Had Phoenix really viewed the conflict-of-interest issue as arbitrable under the treaties, it would have been the simplest thing in the world for it to have made a straightforward demand for arbitration in conformity with the treaties' provisions. It did not. Surely this Court may fairly conclude (1) Phoenix read the treaties in precisely the same way as do North American Companies and this Court—as *not* extending to arbitration the question of who may represent the parties in resolving their substantive quarrels—and (2) Phoenix suffered a change of heart only when it was faced with the Georgia lawsuit raising that very question. That reinforces the construction of the treaties this Court has reached based on their language and structure.

### Conclusion

■ North American Companies are right: Phoenix and they did not agree in their reinsurance treaties to arbitrate the question of law firm representation in the resolution of disputes arising under those treaties. Accordingly the motion to strike the claim for arbitration of those issues is granted, and Complaint ¶¶ 15 and 16 are stricken.

This ruling leaves open the remaining issues posed by this litigation: those relating to the arbitrability of the substantive disputes between the parties. Those issues are also pending in the Georgia District Court litigation, having been raised by Phoenix in its counterclaim there. If arbitration of those disputes is in fact the answer, each treaty calls for that arbitration to take place in Hartford, Connecticut (so that neither this Court nor the Georgia District Court has any real connection to the arbitration). Moreover, because the timing connection between resolution of the legal-representation dispute and the substantive disputes is a matter over which the Georgia District Court would have control, while this Court would not, orderly jurisprudence would seem to call for all the issues to be considered there rather than here.

Thus the disposition of the current motion may implicate 28 U.S.C. § 1404(a) considerations. This Court will await input from the parties on the matter at the previously-scheduled status date of February 27, 1987.

EXHIBIT A

1979 Agreement

(Phoenix No. 0541)

COINSURANCE AGREEMENT between the NORTH AMERICAN COMPA-

---

**3.** North American Companies Mem. 5 refers to the facts stated hereafter in the text, but the Phoenix Memorandum in Opposition is wholly silent on the subject. At Mem. 2 Phoenix says only:

On July 25, 1986, Phoenix proposed to resolve the impasse by an expedited arbitration process.

NY FOR LIFE AND HEALTH INSURANCE of Chicago, Illinois (the "Ceding Company") and PHOENIX MUTUAL LIFE INSURANCE COMPANY of Hartford, Connecticut.

Article XVIII.  ARBITRATION

1. All disputes and differences upon which an amicable understanding cannot be reached are to be decided by arbitration.  The arbitrators are empowered to interpret this Agreement and in so doing shall regard this Agreement from the standpoint of practical business and equity rather than that of the strict law.

2. There shall be three arbitrators who must be executive officers of life insurance companies other than the two parties of this Agreement or any other reinsurer of the Ceding Company or Phoenix Mutual.  One of the arbitrators is to be appointed by the Ceding Company, the second by Phoenix Mutual, and the third is to be selected by these two representatives before the beginning of the arbitration.  Should one of the parties decline to appoint an arbitrator or should the two arbitrators be unable to agree upon the choice of a third, the appointment shall be left to the President of the American Council of Life Insurance or any successor organization.  The arbitration shall be held in Hartford, Connecticut unless otherwise mutually agreed upon by Phoenix Mutual and the Ceding Company.

3. The arbitrators are not bound by any rules of law.  They shall decide by a majority of votes and from their written decision there can be no appeal.  Each party shall pay the fees of its own attorneys and all other expenses connected with the presentation of its case.  The other costs of arbitration, including the fees of the arbitrators, shall be borne by the losing party unless the arbitrators shall decide otherwise.

### 1980 Agreement

### (Phoenix No. 0543)

REINSURANCE AGREEMENT BETWEEN THE NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE OF CHICAGO and PHOENIX MUTUAL LIFE INSURANCE COMPANY of Hartford, Connecticut (the "Ceding Company").

### ARTICLE X.  ARBITRATION

1. Agreement.  All differences between the North American and the Company on which an agreement cannot be reached will be decided by arbitration.  The arbitrators will determine the interpretation of the agreement in accordance with the usual business and reinsurance practices rather than strict technicalities.

2. Method.  Three arbitrators will decide any differences.  They must be officers of life insurance companies other than the two parties to this agreement.  One of the arbitrators is to be appointed by the North American and one by the Company, and these two will select a third.  If the two are unable to agree on a third, the choice will be left to the president of the American Council of Life Insurance, or its successor.

3. Effect.  The arbitrators are not bound by rules of law.  Their decision will be by majority vote and no appeal will be taken from it.  The costs of the arbitration will be borne by the losing party unless the arbitrators decide otherwise.

### 1981 Agreement

### (Phoenix No. 0542)

AUTOMATIC COINSURANCE AGREEMENT between the NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE of Chicago, Illinois (the "Ceding Company") and PHOENIX MUTUAL LIFE INSURANCE COMPANY of Hartford, Connecticut.

### Article XVIII.  ARBITRATION

1. It is the intention of the parties that customs and usages of the business of reinsurance shall be given full effect in the interpretation of this Agreement.  The parties shall act in all things with the highest good faith.  All disputes

and differences upon which an amicable understanding cannot be reached are to be decided by arbitration. The arbitrators are empowered to decide all questions or issues and in interpreting this Agreement shall consider the following:

a. The customary practices of the insurance and reinsurance industry,

b. Principles of equity, and

c. General principles or rules of law.

2. There shall be three arbitrators who must be executive officers, preferably knowledgeable in reinsurance matters, of life insurance companies other than the two parties to this Agreement, or their affiliates or subsidiaries, or any other reinsurer of the Ceding Company, or Phoenix Mutual. One of the arbitrators is to be appointed by the Ceding Company, the second by Phoenix Mutual, and the third is to be selected by these two representatives before the beginning of the arbitration. Should one of the parties decline to appoint an arbitrator or should the two arbitrators be unable to agree upon the choice of the third, the appointment shall be left to the President of the American Council of Life Insurance. The arbitration shall be held in Hartford, Connecticut, unless otherwise mutually agreed upon by Phoenix Mutual and the Ceding Company.

3. The arbitrators shall decide by a majority of votes, and from their written decision, there can be no appeal. Each party shall pay the fees of its own attorneys and all other expenses connected with the presentation of its case. The cost of arbitration, including fees of the arbitrators, shall be borne by the losing parties unless the arbitrators shall decide otherwise.

1982 Agreement

(Phoenix No. 0540)

AUTOMATIC REINSURANCE AGREEMENT between the NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE of Chicago, Illinois (the "Ceding Company") and PHOENIX MUTUAL LIFE INSURANCE COMPANY of Hartford, Connecticut.

Article XVIII. ARBITRATION

1. It is the intention of the parties that customs and usages of the business of reinsurance shall be given full effect in the interpretation of this Agreement. The parties shall act in all things with the highest good faith. All disputes and differences upon which an amicable understanding cannot be reached are to be decided by arbitration. The arbitrators are empowered to decide all questions or issues and in interpreting this Agreement shall consider the following:

a. The customary practices of the insurance and reinsurance industry,

b. Principles of equity, and

c. General principles or rules of law.

2. There shall be three arbitrators who must be executive officers, preferably knowledgeable in reinsurance matters, of life insurance companies other than the two parties to this Agreement, or their affiliates or subsidiaries, or any other reinsurer of the Ceding Company or Phoenix Mutual. One of the arbitrators is to be appointed by the Ceding Company, the second by Phoenix Mutual, and the third is to be selected by these two representatives before the beginning of the arbitration. Should one of the parties decline to appoint an arbitrator or should the two arbitrators be unable to agree upon the choice of the third, the appointment shall be left to the President of the American Council of Life Insurance. The arbitration shall be held in Hartford, Connecticut, unless otherwise mutually agreed upon by Phoenix Mutual and the Ceding Company.

3. The arbitrators shall decide by a majority of votes, and from their written decision, there can be no appeal. Each party shall pay the fees of its own attorneys and all other expenses connected with the presentation of its case. The cost of arbitration, including fees of the arbitrators, shall be

borne by the losing parties unless the arbitrators shall decide otherwise.

### 1983 NANY Agreement

### (Phoenix No. 0544)

AUTOMATIC COINSURANCE AGREEMENT between the NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE OF NEW YORK of Garden City, New York (the "Ceding Company") and PHOENIX MUTUAL LIFE INSURANCE COMPANY of Hartford, Connecticut.

Article XVIII.   ARBITRATION

1. It is the intention of the parties that customs and usages of the business of reinsurance shall be given full effect in the interpretation of this Agreement. The parties shall act in all things with the highest good faith.   All disputes and differences upon which an amicable understanding cannot be reached are to be decided by arbitration.   The arbitrators are empowered to decide all questions or issues and in interpreting this Agreement shall consider the following:

   a.   The customary practices of the insurance and reinsurance industry,

   b.   Principles of equity, and

   c.   General principles or rules of law.

2. There shall be three arbitrators who must be executive officers, preferably knowledgeable in reinsurance matters, of life insurance companies other than the two parties to this Agreement, or their affiliates or subsidiaries, or any other reinsurer of the Ceding Company, or Phoenix Mutual.   One of the arbitrators is to be appointed by the Ceding Company, the second by Phoenix Mutual, and the third is to be selected by these two representatives before the beginning of the arbitration. Should one of the parties decline to appoint an arbitrator or should the two arbitrators be unable to agree upon the choice of the third, the appointment shall be left to the President of the American Council of Life Insurance.   The arbitration shall be held in Hartford, Connecticut, unless other-

wise mutually agreed upon by Phoenix Mutual and the Ceding Company.

3. The arbitrators shall decide by a majority of votes, and from their written decision, there can be no appeal.   Each party shall pay the fees of its own attorneys and all other expenses connected with the presentation of its case.   The cost of arbitration, including fees of the arbitrators, shall be borne by the losing parties unless the arbitrators shall decide otherwise.

### 1984 Agreement

### (Phoenix No. 0539)

AUTOMATIC COINSURANCE AGREEMENT between the NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE of Chicago, Illinois (the "Ceding Company") and PHOENIX MUTUAL LIFE INSURANCE COMPANY of Hartford, Connecticut.

Article XVIII.   ARBITRATION

1. It is the intention of the parties that customs and usages of the business of reinsurance shall be given full effect in the interpretation of this Agreement. The parties shall act in all things with the highest good faith.   All disputes and differences upon which an amicable understanding cannot be reached are to be decided by arbitration.   The arbitrators are empowered to decide all questions or issues and in interpreting this Agreement shall consider the following:

   a.   the customary practices of the insurance and reinsurance industry,

   b.   Principles of equity, and

   c.   General principles or rules of law.

2. There shall be three arbitrators who must be executive officers, preferably knowledgeable in reinsurance matters, of life insurance companies other than the two parties to this Agreement, or their affiliates or subsidiaries, or any other reinsurer of the Ceding Company, or Phoenix Mutual.   One of the arbitrators is to be appointed by the Ceding Company, the second by Phoenix Mutual, and the third is to be selected by these two representatives be-

fore the beginning of the arbitration. Should one of the parties decline to appoint an arbitrator or should the two arbitrators be unable to agree upon the choice of the third, the appointment shall be left to the President of the American Council of Life Insurance. The arbitration shall be held in Hartford, Connecticut, unless otherwise mutually agreed upon by Phoenix Mutual and the Ceding Company.

3. The arbitrators shall decide by a majority of votes, and from their written decision, there can be no appeal. Each party shall pay the fees of its own attorneys and all other expenses connected with the presentation of its case. The cost of arbitration, including fees of the arbitrators, shall be borne by the losing parties unless the arbitrators shall decide otherwise.

## EXHIBIT B

### Phoenix Mutual Life
### Insurance Company

July 25, 1986

VIA TELECOPY

Mr. Paul Wolfman
Vice President and General Counsel
North American Company for Life and Health Insurance
222 South Riverside Plaza
Chicago, IL 60690

Re: Reinsurance Treaties Dispute

Dear Mr. Wolfman

After unsuccessfully attempting to reach you by telephone and in the interest of expediting the resolution of the conflict of interest question, I decided to set forth in writing the following proposal. As you know, the conflict of interest question that has been raised concerns NACOLAH's continued representation by Mr. Matthew Patton or any members of his firm in connection with the dispute between Phoenix Mutual and NACOLAH regarding business reinsured under any and all reinsurance treaties between both companies.

Phoenix Mutual proposes that the following procedures be used to resolve this question:

a. The conflict of interest matter will be determined by a single arbitrator. The arbitrator will not have any authority to determine any other matter or dispute.

b. Each company within 10 days after acceptance of this proposal will submit the names of three potential arbitrators to the other company from which the one arbitrator will be mutually agreed upon. The individuals nominated by each company will be knowledgeable in the area of legal ethics.

c. In the event that an agreement is not reached by the companies as to the selection of an arbitrator within 10 days after submission of names each company will submit its names of three potential arbitrators along with any reason it may have as a basis for objection to an arbitrator proposed by the other company to the President of the American Council of Life Insurance (ACLI). The President of the ACLI shall select a single arbitrator from the names submitted within 10 days after such submission.

d. Each company shall simultaneously submit briefs, documents, and affidavits in support of their respective positions to the single arbitrator within 15 days of the acceptance by the arbitrator of the appointment to hear the dispute.

e. A written decision of the arbitrator shall be rendered within 15 days after the submission of these documents.

f. There will be no evidentiary hearing, oral arguments, depositions, or other discovery held or taken in connection with the arbitration.

g. Each company shall assume its own costs for preparing documents and briefs. The companies shall share equally in the fee and expenses of the arbitrator.

h. The decision of the arbitrator shall be binding on both companies. There will be no right of further appeal.

i. This agreement and the proceedings before the arbitrator shall be confidential.

After you have reviewed this proposal, please contact me with your reply. I would appreciate a response to this proposal no later than August 1, 1986.

Sincerely,

/s/ Philip R. McLoughlin

Philip R. McLoughlin
Senior Vice President
and General Counsel
PM:DD
1.58