771 F.2d 211
 120 L.R.R.M. (BNA) 2067, 103 Lab.Cas. P 11,530
 R.J. DISTRIBUTING COMPANY, an Illinois corporation, Plaintiff-Appellee,
v.
TEAMSTERS, CHAUFFEURS & HELPERS LOCAL UNION NO. 627, an
affiliate of the International Brotherhood of
Teamsters, Chauffeurs, Warehousemen &
Helpers of America, Defendant-Appellant.
 No. 84-2014.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 23, 1985.
Decided Aug. 16, 1985.
 
 Gerry M. Miller, Goldberg, Previant, Uelman, Gratz & Miller, Milwaukee, Wis., for defendant-appellant.
 Thomas E. Leiter, Leiter, Leiter & Sahn, Peoria, Ill., for plaintiff-appellee.
 Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and WYATT, Senior District Judge*.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 In this appeal, we are asked to determine whether the district court correctly concluded that a grievance filed by the Teamsters, Chauffeurs, and Helpers Local Union No. 627 (the "Union") is not subject to arbitration under the collective bargaining agreement between R.J. Distributing Company ("R.J.") and the Union.
 
 I.
 
 2
 On May 1, 1983, the Union executed, as it had for the preceding twenty years, a collective bargaining agreement with a number of companies, collectively, the Beer and Liquor Distributors of the Peoria, Illinois area. R.J. is a member of this multiemployer bargaining group. The Union represents the employees of the signatory companies. Pabst Brewing Company, which had been a member of this multiemployer bargaining group since at least 1971, withdrew in 1977. Since 1977, Pabst has negotiated and executed separate agreements with the Union.
 
 
 3
 In 1971, the Union and the Beer and Liquor Distributors negotiated "Sale of Assets" provisions which have been included in substantially the same form in all subsequent agreements between the parties. The "Sale of Assets" provisions of the 1983 agreement between the Union and the Beer and Liquor Distributors read as follows:
 
 Section 21.1:
 
 4
 In the event the Company, party to this Agreement, acquires work or performs services previously performed by a company not party to this Agreement, then in that event, the employees of such company not party to this Agreement shall have no rights under this Agreement, including, specifically, the right to go with the work and acquire seniority under the terms and provisions of this Agreement, except as new employees.
 
 Section 21.2:
 
 5
 In the event that this Company, party to this Agreement, acquires work or performs services previously performed by another company who is also a party to this Agreement, then in that event, the employee so affected shall have the right to follow the work, and shall retain benefits and rights previously in effect with their former Company.
 
 
 6
 The corresponding sections of the 1983 agreement between the Union and Pabst are identical.
 
 
 7
 On August 9, 1983, Pabst and R.J. entered into an agreement whereby R.J. agreed to purchase Pabst's distribution operation in the Peoria area. On August 25, 1983, the Union filed a grievance against R.J., claiming that under section 21.2 of the 1983 agreement between the Union and the Beer and Liquor Distributors, the Pabst employees were entitled to employment with R.J. and to retain the benefits and seniority they had acquired during their employment with Pabst. On August 26, 1983, Pabst terminated the employment of employees represented by the Union under the Pabst agreement.
 
 
 8
 When R.J. denied the grievance, the Union sought to invoke the arbitration provisions of the agreement.
 
 Section 13.1 provides that:
 
 9
 Should any controversy arise over the interpretation, application, or working conditions covered by this agreement, which cannot be settled verbally by the employee and the Company, it shall be reduced to writing no later than fourteen (14) days after such impasse is reached.
 
 
 10
 Within five days of receiving the Union's grievance, the Company must schedule a meeting with the Union's business agent. Within five days of the meeting, the Company must provide the agent a written answer. Section 13.2 of the Agreement. If the dispute has not been satisfactorily resolved, the Union may request arbitration within ten days of the Company's answer. Section 13.3 of the Agreement. Under section 13.5, "the arbitrator shall be bound by the terms and provisions of this Agreement and shall have authority to consider only grievances presenting an arbitrable issue under this Agreement."
 
 
 11
 R.J. refused to arbitrate, and filed an action pursuant to section 301 of the Labor-Management Relations Act, 29 U.S.C. Sec. 185, seeking a declaration that it was not required to arbitrate the dispute and that section 21.1 of the agreement applied to the controversy. The Union counterclaimed to compel R.J. to arbitrate the grievance. Both parties moved for summary judgment. Following an evidentiary hearing, R.J.'s motion was granted, the Union's motion was denied, and the case was dismissed.
 
 
 12
 The district court reasoned that the dispute was not arbitrable because the Union was asserting the interests of employees who were not covered by the agreement between the Union and the Beer and Liquor Distributors. The court held that its finding that the dispute was not arbitrable because Pabst was not a signatory to the agreement between the Union and the Beer and Liquor Distributors mandated the conclusion that Pabst employees have no rights under section 21.2 of the agreement. The Union appeals.
 
 II.
 
 13
 The Union phrases the underlying disputed issue as follows: whether section 21.1 or section 21.2 governs the fate of Pabst employees following the acquisition of the Pabst Peoria area distribution operation by R.J. The resolution of this issue is dependent upon the proper interpretation of the phrase "party to this Agreement," which is contained in both sections. The resolution of these issues, the Union claims, is resolution of the merits of the dispute. Under well-established principles of labor law, which limit a court's authority to determining "whether the party seeking arbitration is making a claim which on its face is governed by the contract," United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 567-68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), consideration of these issues was beyond the district court's power. The district court, the Union contends, was limited to deciding whether these issues were subject to arbitration under the arbitration provisions of the agreement as "controversies ... over the interpretation" of the agreement. The Union argues that the court erred in basing its arbitrability determination on its interpretation of sections 21.1 and 21.2, the substantive provisions of the agreement that are the focus of the dispute.
 
 
 14
 Although suggesting in its brief that the issues of arbitrability and the appropriate resolution of the merits of the underlying dispute were sufficiently distinct to permit the district court to rule on the former without becoming entangled in the latter, at oral argument, the Union, relying on this court's recent decision in Communication Workers of America v. Western Electric Co., 751 F.2d 203 (7th Cir.1984), argued that we should compel arbitration of the arbitrability issue as well as the underlying dispute because a decision on arbitrability in this case necessarily involves interpretation of the substantive provisions of the agreement, i.e., the merits of the dispute.
 
 
 15
 Citing section 13.5 of the agreement, R.J. retorts that an arbitrator has the authority to consider only grievances arising "under this Agreement." Because the Union filed the grievance on behalf of former Pabst employees who never worked under the R.J.-Union agreement, the grievance cannot be deemed to arise under that agreement. R.J. urges us to reject the Union's contention that an arbitrability determination that concomitantly effects a resolution of the underlying dispute is always an impermissible decision on the merits.
 
 
 16
 It is axiomatic that arbitration is a matter of contract. A party cannot be forced to submit to arbitration a dispute that it has not consented to submit. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The federal court's task is to ascertain from the contract whether the reluctant party agreed to arbitrate the grievance. As a general rule, if the contract is susceptible of an interpretation that the dispute is arbitrable, arbitration should be ordered. But if the court is positively assured that the contract is not susceptible of such an interpretation, arbitration cannot be ordered.
 
 
 17
 Under the agreement between the Union and R.J., a grievance is implicitly defined in section 13.1 as "any controversy ... over the interpretation, application, or working conditions covered by [the] agreement, which cannot be settled verbally by the employee and the Company." The arbitrator has the authority "to consider only grievances presenting an arbitrable issue under [the] agreement." Arbitrable issues, then, are controversies over the interpretation, application, or working conditions covered by the agreement which cannot be settled either verbally by the company and the employee or in a meeting between the Union's business agent and a company representative.
 
 
 18
 We think it beyond peradventure that only disputes between parties to the agreement, that is, the signatory companies and the Union in its capacity as representative of their employees, are arbitrable under the agreement. The collective bargaining agreement at issue governs the employment relationship between "the undersigned Beer and Liquor Distributors," including R.J., and their employees. Pabst admittedly was not a signatory to this agreement; rather it negotiated and executed a separate agreement with the Union. The Pabst-Union agreement alone covered Pabst employees. Pabst employees acquired no rights under the R.J.-Union agreement that they could seek to enforce through its grievance-arbitration mechanism.
 
 
 19
 True, the Union represents Pabst employees as well as R.J. employees but under separate agreements, separately negotiated. Commonality of representation is an insufficient basis for finding this dispute arbitrable under the R.J.-Union agreement. The Union is a party to that agreement, but only in its capacity as representative of the employees of the signatory companies. This representative capacity gives the Union standing under the agreement to assert the grievances of those employees. At the time the grievance was filed in this case, the employees on whose behalf the Union was pursuing the grievance were Pabst employees. The Union, in its capacity as representative of the Pabst employees, was not a party to the agreement it had negotiated and signed on behalf of the employees of those companies comprising the multiemployer bargaining unit of the Beer and Liquor Distributors.
 
 
 20
 The Union informs us that this court's decision in Local 703, International Brotherhood of Teamsters v. Kennicott Bros. Co., 725 F.2d 1088 (7th Cir.1982), makes clear that the Union's attempt to represent the interests of Pabst employees under the agreement between it and R.J. is not an appropriate basis for exempting the grievance from arbitration. We disagree that Kennicott is dispositive. Under the collective bargaining agreement between Kennicott Brothers and Local 703, Local 703 represented the "flower packers, wrappers, and stockmen." The underlying dispute was whether the "bouquet makers" could be deemed to be either flower packers, wrappers or stockmen. True, the issue was representational in the sense that if bouquet makers were not found to be within one of these job categories, they would not be represented by the union. But there is a clear difference between the union's attempt to represent the interests of production workers concededly employed by Kennicott and therefore arguably covered by the agreement between the parties and this Union's attempt to represent the interests of Pabst workers concededly not then employed by R.J. and therefore not covered by the agreement between the Union and R.J. Kennicott essentially involved merely an in-house squabble over the proper classification of certain production workers, a dispute that clearly arose under the collective bargaining agreement. The instant case, in stark contrast, involves an attempt to pursue a grievance on behalf of persons not employed by the company with whom the Union had contracted.
 
 
 21
 Nor is our holding in conflict with our recent decision in Western Electric. In that case, we sent the arbitrability issue to the arbitrator because there were colorable arguments both for and against exclusion of the issue from arbitration, the resolution of which would require interpretation of less than clear substantive provisions. 751 F.2d at 207. Here, there is no colorable argument against exclusion of the issue from arbitration. Nor do we need to interpret any substantive provision of the agreement to decide whether this dispute is arbitrable. We need only look to the introductory paragraph of the agreement which makes clear that the agreement was entered into by the Union and the undersigned companies. Pabst was not a signatory to the agreement. It follows that Pabst employees were not covered by the agreement and have no standing to enforce its arbitration provisions.
 
 
 22
 We see no reasoned basis for distinguishing between a signatory to the agreement and a party to the agreement; they are one and the same, and Pabst is neither. Pabst employees therefore have no right to follow the work or retain the seniority acquired with Pabst. The Union's argument that the sale of assets provisions are meaningless if not enforceable against the successor company is unavailing. Had the Union wanted to protect successfully the interests of Pabst employees following a sale by Pabst of its distribution operation, it should have bargained for such protection in its agreement with Pabst. It did not. Neither this court nor an arbitrator can now remedy that failure.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Inzer Bass Wyatt, Senior District Judge for the Southern District of New York, is sitting by designation