722 F.Supp. 561 (1989)
LOCAL UNION NO. 36, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, AFL-CIO, Plaintiff,
v.
ATLAS AIR CONDITIONING COMPANY, Defendant.
No. 88-1834C(6).
United States District Court, E.D. Missouri, E.D.
October 6, 1989.
Sally E. Barker, Schuchat, Cook and Werner, St. Louis, Mo., plaintiff.
David G. Millar, Millar, Schaefer & Hoffmann, St. Louis, Mo., L.G. Clinton, Jr., L.G. Clinton, Jr. & Associates, Houston, Tex., for Atlas Air Conditioning Co.

MEMORANDUM AND ORDER
GUNN, District Judge.
This case is presently before the Court on plaintiff's motion for summary judgment. For the following reasons, the Court will grant the motion.
Plaintiff Local Union No. 36, Sheet Metal Workers' International Association, AFL-CIO ("Local 36") brings this action, pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. *562 § 185, to enforce an arbitration award in its favor against defendant Atlas Air Conditioning Company ("Atlas"). Atlas contends that because it is not a signatory to a collective bargaining agreement with Local 36, the local has no standing to bring a grievance against Atlas or to enforce any award obtained.
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if it can "show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party, and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir.1986). However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2739 (1983).
The non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must set forth specific facts to show that "there is sufficient evidence favoring [it] for a jury to return a verdict for [it]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). As the Supreme Court recently observed, summary judgment is not "a disfavored procedural shortcut" but "an integral part of the Federal rules ... which are designed `to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 1). Indeed, and if appropriate, summary judgment serves "a salutary purpose in avoiding a useless, expensive and time consuming trial where there is no genuine, material fact issue to be tried." Lyons v. Board of Education of Charleston, 523 F.2d 340, 347 (8th Cir.1975).
The undisputed material facts of this controversy are as follows. Local 36 is a labor organization affiliated with the Sheet Metal Workers' International Association ("the International"). The jurisdiction of Local 36 includes St. Louis County, the City of St. Louis, and forty-two other Missouri counties.
Atlas is a corporation organized and existing under the laws of Texas and doing business in St. Louis County, Missouri.
Local unions affiliated with the International negotiate collective bargaining agreements in a two-step process. First, national level negotiations take place between the International and Sheet Metal and Air Conditioning Contractors National Association, Inc. ("SMACNA"), a national association of employers in the sheet metal construction industry. These parties negotiate a standard form of union agreement that is distributed to local unions and employers for further negotiations. The local parties may adopt the agreement as is, with blanks filled in, or with modifications. The local unions and employers then sign the agreements which apply to sheet metal construction work in geographic areas spelled out in the agreements.
Local 36 has a collective bargaining agreement with the St. Louis chapter of SMACNA. This agreement is based upon the standard form of union agreement negotiated by the International and SMACNA. Local 36 does not have any bargaining agreement directly with Atlas.
Local 54 is also a local union affiliated with the International. It and Atlas are *563 parties to a collective bargaining agreement covering sheet metal construction work in Houston and surrounding Texas counties. The Local 54 agreement is also based upon the standard International/SMACNA agreement.
The opening sentence of the standard agreement provides: "This agreement covers the rates of pay, and conditions of employment of all employees of the employer...." Local 54/Atlas agreement, p.l. (The agreement, as referred to here and throughout this memorandum, is contained in Exhibit B to plaintiff's motion for summary judgment.) Further, at Art. VIII, Section 5, the agreement to which Atlas is a signatory provides: "Except as provided in Section 2 and 6 of this Article, the Employer agrees that journeyman sheet metal workers hired outside of the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the Local Agreement covering the territory in which such work is performed or supervised." Local 54/Atlas agreement, p.9.
Both the Local 36 agreement and the Local 54 agreement contain the following provision:
Article VIII
* * * * * *

Section 6. When the employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another Agreement with another union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the employer deems necessary, both of whom shall be from the employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Agreement, but in no case less than the established wage scale of the local agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the employer shall be otherwise governed by the established working conditions of this local agreement. If employees are sent into the area where there is no local agreement of the Sheet Metal Workers' International Association covering the area, then the minimum conditions of the home local shall apply.
Local 54/Atlas agreement, p. 9.
Atlas began performing work in the Local 36 jurisdiction in September 1987. Plaintiff alleges, and defendant does not deny, that in performing this work, defendant used employees who were neither members of plaintiff or Local 54 nor referred by them under the terms of the agreement. Further, defendant refused to pay wages and fringe benefits or comply with working conditions required by the Local 36 agreement (the local agreement covering the St. Louis area).
When Local 36 became aware that Atlas was performing sheet metal construction work in the St. Louis area but had not utilized the Local 36 hiring hall and was not complying with any other terms of the local agreement, its representatives immediately contacted Atlas and demanded compliance with the agreement. Atlas refused. Local 36 then filed a grievance against Atlas with the Local Adjustment Board. Atlas contends that because it is not a party to any collective bargaining agreement with Local 36, it is not obligated to comply with any such agreement or submit to the jurisdiction of the Local Adjustment Board. Atlas refused to defend the grievance or respond to it and was not present at the arbitration hearing.
On May 3, 1988, after a hearing, the Local Adjustment Board ruled unanimously in favor of Local 36, concluding that Atlas was obligated to abide by the Local 36 agreement. The Board ordered Atlas to *564 pay back wages and back fringe benefits for all hours worked by its employees in the area covered by the local agreement and immediately commence compliance with the terms of the agreement. The Board also ordered Atlas to submit and pay for an audit of all hours worked and wages paid to its employees within the Local 36 area. Atlas has refused to comply with the Board's decision. As a result, Local 36 filed this action, pursuant to Section 301 of the LMRA on September 20, 1988.
Atlas argues that only the parties to a collective bargaining agreement may enforce the agreement's grievance procedures in an action under § 301 of the NLRA. A fortiori, according to Atlas, Local 36 cannot bring this action because it is not directly signatory to any collective bargaining agreement with defendant. The Court disagrees.
Although the Eighth Circuit does not seem to have addressed the precise circumstances at issue here, other courts of appeals have. Under two separate analyses, the courts reject the position Atlas assumes.
The Ninth Circuit holds that the Sheet Metal Workers' Standard Agreement under consideration here contains an "extra-territorial effect[] that confer[s] benefits" on the "visited" local. McKinstry Co. v. Sheet Metal Workers' Intern'l, 859 F.2d 1382, 1385 (9th Cir.1988). McKinstry's argument, rejected by the Ninth Circuit, foreshadowed Atlas' allegations herein:
McKinstry argues that [language from Article VIII, sections 5 and 6 of the standard agreement] applies only to workers from the [signatory local] who are sent to a job site in another area. The district court conceded that "[t]he language could certainly be read that way," but found that the individuals who negotiated the standard form agreement intended it to apply to workers from the "visited" area as well.
McKinstry, 859 F.2d at 1386. The Ninth Circuit, interpreting the same Sheet Metal Workers' Standard Agreement at issue here, concludes: "it is clear that visited-area local unions are intended to receive some benefits under the Agreement." McKinstry, 859 F.2d at 1387.
Secondly, McKinstry alleged, as does Atlas in the case sub judice, that even if the agreement does confer extraterritorial benefits, the visited local is not the proper party to enforce the agreement because that local and the visiting employer have not signed an agreement between themselves. The Ninth Circuit also rejects this argument. McKinstry, 859 F.2d at 1388.
The Court finds both aspects of the McKinstry analysis persuasive. First, the clear language of the Local 54/Atlas agreement mandates Atlas' compliance with the Local 36 agreement. Atlas' work in the St. Louis area is "outside of the area covered by" the Local 54 agreement and "within the area covered by another agreement with another union [Local 36] affiliated with the Sheet Metal Workers' International Association." As required by Article VIII of the Standard Agreement, Atlas "shall be ... governed by the established working conditions of this [Local 36] Agreement." Moreover, Article I, Section 7 of the Standard Agreement provides: "It is mutually agreed that local working agreements between the Sheet Metal Workers and other Local Unions will apply wherever practicable." The Court finds that under the Standard Agreement, to which both parties are bound, Atlas is required to comply with the Local 36 agreement (the same standard agreement to which Atlas is signatory with Local 54) when working within the Local 36 area.
The agreement contemplates and intends benefits being conferred upon extraterritorial unions. It follows, then, that the agreement provides the necessary mechanism whereby Local 36 can enforce those benefits. See McKinstry, 859 F.2d at 1388.
Objections to the arbitration award were not timely raised in a motion to vacate and therefore may not later be raised as defenses to an action brought to enforce the arbitration award. Sanders-Midwest v. Midwest Pipe Fabricators, 857 F.2d 1235, 1238-39 (8th Cir.1988); Chauffeurs, Teamsters, Warehousemen & Helpers, Lo- *565 cal Union No. 135 v. Jefferson Trucking Co., 628 F.2d 1023, 1026-27 (7th Cir.1980). Defendant neither appeared at the arbitration hearing, appealed the arbitrator's award, nor filed a motion to vacate. The plain language of the agreement permits Atlas to appeal the arbitration award, Article X, Section 3. Nevertheless, Atlas did not exercise this right. Therefore, the defenses it attempts to raise in this proceeding untimely.
Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment be and it is granted.

JUDGMENT
In accordance with the Court's memorandum and order filed herewith,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be entered in favor of plaintiff and against defendant, plaintiff's summary judgment motion having been granted.
IT IS FURTHER ORDERED that defendant shall comply, in all respects, with the decision of the Local Joint Adjustment Board.
IT IS FURTHER ORDERED that this matter be and it is remanded to the Local Joint Adjustment Board for a calculation of the amount of damages, including plaintiff's reasonable attorneys' fees and costs, due under said decision.