**LABORERS INTERNATIONAL UNION OF NORTH AMERICA, Plaintiff,**

v.

**HSA CONTRACTORS, INC., Defendant.**

No. 89–C–587.

United States District Court,
E.D. Wisconsin.

Dec. 22, 1989.

520

Matthew R. Robbins, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, Wis., for plaintiff.

Russ R. Mueller, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

Laborers International Union of North America has commenced the above-captioned case against HSA Contractors, Inc. seeking a judgment declaring that it is not bound by the labor agreement between HSA and Laborers Local No. 113 and that the arbitrator in a pending grievance between HSA and Local 113 has no authority to bind the International Union to the labor agreement between Local 113 and HSA. The plaintiff also seeks an order enjoining HSA from attempting to submit to the grievance arbitration procedure under its agreement with Local 113 the claim that the International Union is a party or is bound by the labor agreement between HSA and Local 113. The plaintiff alleges that this court has jurisdiction over the subject matter of its claims under 28 U.S.C. § 1337 and 29 U.S.C. § 185.

HSA has answered by denying that the International Union is entitled to declaratory or injunctive relief and by asserting a counterclaim asking for a judgment declar-

ing that the International Union is obligated to submit to arbitration with HSA and that the International Union has breached its contractual obligation in failing and refusing to do so. Shortly after this answer was served the parties filed cross motions for summary judgment which are now fully briefed and ready for decision.

## I. FACTS

As a result of the settlement of unfair labor practice charges filed by Laborers Local No. 113 against HSA in 1985, HSA recognized Local 113 as the collective bargaining agent for certain of its employees and, in 1988, HSA and Local 113 entered into a collective bargaining agreement. A master labor agreement entitled "National Agreement Between the Asbestos Abatement Contractors Association and the Laborers' International Union of North America, AFL–CIO" was used as a model for the collective bargaining agreement between Local 113 and HSA. However, the plaintiff (International Union) did not take part in negotiations of the agreement and did not sign the agreement. *See* Complaint at Exhibit A.

On October 28, 1988, HSA filed a grievance alleging that Local 113 had violated the collective bargaining agreement. *See* Complaint at Exhibit B. When Local 113 and HSA could not resolve the grievance, Local 113 and HSA submitted the grievance to arbitration pursuant to Article X of the collective bargaining agreement. *See* Complaint at Exhibit A. On April 16, 1989, HSA notified the International Union of its contention that the International Union was bound by the labor agreement and that it was submitting this issue to the arbitrator. *See* Complaint at Exhibit C. After a hearing on May 19, 1989, the arbitrator postponed the proceedings pending a district court ruling on whether the International Union must submit to arbitration. *See* Answer and Counterclaim by the Defendant at Attachment B. This is the issue addressed in the parties' cross-motions for summary judgment.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), a party moving for summary judgment must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *McGraw–Edison Company v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986). When faced with a properly supported motion for summary judgment, the nonmovant may not avoid judgment by simply resting on its pleadings. If the nonmovant bears the burden of production on an issue at trial, it must affirmatively demonstrate, by specific showings, that there is a genuine issue of material fact requiring a trial. *See First National Bank of Cicero v. Lewco Securities Corporation*, 860 F.2d 1407, 1411 (7th Cir.1988).

■ A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A summary judgment procedure is not meant to be a trial on affidavits. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. At the summary judgment stage the judge's function is to determine whether there is sufficient evidence favoring the nonmoving party for that party to be entitled to judgment. *See First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case in which a bench trial has been requested, the record must show that the court could find by a preponderance of the evidence that the party upon whom the

burden of proof is imposed is entitled to a judgment in its favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If that party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.* at 249–50, 106 S.Ct. at 2510–11.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Where, as here, the court is presented with cross motions for summary judgment, the court may fairly infer that no evidence other than the pleadings and supporting documents offered by the litigants need be considered in order to determine whether a genuine issue of material fact exists in the dispute. *See Williams v. Frank*, 702 F.Supp. 14, 16 (D.Mass.1988). The court must consider each party's motion separately. Each movant has the burden of presenting evidence to support its motion which would allow the court, if appropriate, to enter a judgment in its favor with the evidence being viewed in the light most favorable to the party opposing the motion. *See Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir.1988).

### III. DISCUSSION AND DECISION

#### A. *Contractual Basis of Obligation to Arbitrate*

In the instant case the ultimate issue raised by both movants is whether the International Union must submit to arbitration with HSA. This issue is governed by federal labor law and the common law of agency.

■ As a threshold matter the question of whether an entity is contractually bound to submit to arbitration is a question for the district court rather than the arbitrator. *See Laborers' International Union of North America, AFL–CIO v. Foster Wheeler Corporation*, 868 F.2d 573, 577 (3d Cir.1989). Thus, the question of whether the International Union must participate in the arbitration of the underlying grievance with Local 113 and HSA is properly before this court.[1]

■ The federal court's task is to ascertain from the contract whether the reluctant party agreed to arbitrate. *See R.J. Distributing Company v. Teamsters, Chauffeurs & Helpers Local Union No. 627*, 771 F.2d 211, 214 (7th Cir.1985). The Seventh Circuit has recently explained that:

> The principles governing the arbitrability of disputes between a union and a company under collective bargaining agreements are well-established. *See United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403] (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409] (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424] (1960) (collectively referred to as the *Steelworkers Trilogy*). The Supreme Court recently reaffirmed these principles in *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 [106 S.Ct. 1415, 89 L.Ed.2d 648] (1986).

The foundational principle derived from the *Steelworkers Trilogy* is that the duty to submit a dispute to arbitration is contractual and therefore a party

---

1. Although in its Answer and Counterclaim HSA denied that the question of whether the International Union is bound to arbitrate is a question committed to the district court rather than the arbitrator, *see* Answer and Counterclaim by the Defendant at ¶ 11, HSA now concedes that the law is otherwise. *See* Statement in Opposition to Plaintiff's Motion for Summary Judgment and Brief in Support of Defendant's Cross–Motion for Summary Judgment at 2.

cannot be compelled to arbitrate a dispute when he has not agreed to do so. *AT & T Technologies,* 475 U.S. at 648 [106 S.Ct. at 1418].

*Oil, Chemical and Atomic Workers International Union, Local 7–1 v. Amoco Oil Company,* 883 F.2d 581, 584 (7th Cir.1989). No legal obligation to arbitrate a labor dispute can arise by operation of law. A party is compelled to submit its rights to arbitration only if it has contracted to do so. *See Gateway Coal Company v. United Mine Workers of America,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974); *Laborers' International Union of North America, Local Union No. 309, AFL–CIO v. W.W. Bennett Construction Company, Inc.,* 686 F.2d 1267, 1274–75 (7th Cir.1982). Without such agreement, the arbitrator obtains no jurisdiction over the person sought to be charged. *See Sheet Metal Workers International Association, Local Union No. 91 v. Bridge, Structural & Ornamental Ironworkers, Local Union 111,* 495 F.Supp. 326, 331 (C.D.Ill.1980).

**2.** While it is presumed that an arbitration provision in a labor agreement binds the signatories to the agreement, no such presumption applies in the case of a nonsignatory. In the case of a nonsignatory, the presumption is that the arbitration provision is not binding on it. *See McKinstry Company v. Sheet Metal Workers' International Association, Local Union #16,* 859 F.2d 1382, 1384–85 n. 2 (9th Cir.1988).

**3.** Nonsignatories have also been ordered bound by arbitration agreements in non-labor cases. *See, e.g., Interpool Limited v. Through Transport Mutual Insurance Association Limited,* 635 F.Supp. 1503, 1504–05 (S.D.Fla.1985) (nonparty ordered to arbitrate when found to have third-party beneficiary status under the contract); *Hartford Financial Systems v. Florida Software Service, Inc.,* 550 F.Supp. 1079, 1086 (D.Me. 1982) (nonsignatories may be deemed parties thereto, through ordinary contract and agency principles for purposes of the Federal Arbitration Act), *appeal dismissed,* 712 F.2d 724 (1st Cir.1983). *But see, e.g., Wren Distributors, Inc. v. Phone-Mate, Inc.,* 600 F.Supp. 1576, 1579–81 (E.D.N.Y.1985) (nonsignatory distributor could not be compelled to arbitrate its claims against designer based on arbitration agreement between sales representative organization, which distributor formed, and designer in view of evidence indicating that distributor not alter ego of sales organization).

■ It is undisputed that the International Union is not a signatory to the 1988–91 collective bargaining agreement between HSA and Local 113.[2] *See* Complaint at Exhibit A. The agreement states in its first paragraph that:

This agreement is made and entered into by and between HSA CONTRACTORS, INC., Milwaukee, Wisconsin, hereinafter referred to as "Employer" and LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 113, AFL–CIO, hereinafter referred to as "Union."

*Id.* at Exhibit A, p. 1. Furthermore, there is no explicit term or condition on the face of the document which appears to bind the International Union. Nevertheless, these facts alone are not determinative. *See A/S Custodia v. Lessin International, Inc.,* 503 F.2d 318, 320 (2d Cir.1974) (per curiam) (under federal law, obligation to arbitrate does not attach only to one who has personally signed the written provision). Courts have ruled that nonsignatories can be bound by arbitration provisions in collective bargaining agreements under a number of theories.[3] *See, e.g., McKinstry Company*

Under the common law of agency a nonsignatory principal may enforce an arbitration agreement entered into between its agent and a third party, *see Interbras Cayman Company v. Orient Victory Shipping Company, S.A.,* 663 F.2d 4, 6–7 (2d Cir.1981), or be bound by such an agreement, *see A/S Custodia v. Lessin International, Inc.,* 503 F.2d 318, 320 (2d Cir.1974) (per curiam).

In addition, the following types of nonparties to a contract containing an arbitration clause have been found to be bound by the arbitration agreement: (1) broker's affiliates, *Ketchum v. Almahurst Bloodstock IV,* 685 F.Supp. 786, 793–94 (D.Kan.1988); (2) guarantors, *Compania Espanola de Petroleos v. Nereus Shipping, S.A.,* 527 F.2d 966, 973–74 (2d Cir.1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); (3) potential indemnitors, *Caribbean Steamship Company, S.A. v. Sonmez Denizcilik Ve Ticaret A.S.,* 598 F.2d 1264, 1267 (2d Cir.1979); (4) affiliated corporations, *Knorr Brake Corporation v. Harbil, Inc.,* 556 F.Supp. 489, 493 (N.D.Ill. 1983); (5) broker/dealer's employees, *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185, 1187–88 (9th Cir.1986); (6) insurance subrogees, *Lumbermens Mutual Casualty Company v. Borden Company,* 268 F.Supp. 303, 313 (S.D.N.Y. 1967); (7) contract assignees, *Fisser v. International Bank,* 282 F.2d 231, 233 n. 6 (2d Cir. 1960); (8) individual partners of partnership and successor partners, *Hartford Financial Sys-*

*v. Sheet Metal Workers' International Association, Local Union # 16,* 859 F.2d 1382, 1388–90 (9th Cir.1988) (nonsignatory local union could avail itself of grievance and arbitration procedures set forth in collective bargaining agreement between contractor and affiliated local where agreement found to have extraterritorial application and where use of grievance procedure would promote cooperation and harmony); *Eazor Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 520 F.2d 951, 958–59 (3d Cir.1975) (nonsignatory International Union held to be party to a labor agreement because signatory party, the National Committee, found to be functionally and organizationally an administrative arm of the International), *cert. denied,* 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976). *But see, e.g., Service, Hospital, Nursing Home and Public Employees Union, Local No. 47, Affiliated with the Service Employees International Union, AFL–CIO, CLC v. Commercial Property Services,* 755 F.2d 499, 505 (6th Cir.1985) (employer could not be compelled to arbitrate with local union when it was not a signatory of collective bargaining agreement and was found not to be an alter-ego of signatory employer), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985); *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Public Service Company of Indiana,* 705 F.2d 238, 240–43 (7th Cir. 1983) (owner of construction site had no obligation to arbitrate with local union under contract specifying that only the employer had that obligation and facts did not support finding that owner was joint employer); *Wilkes–Barre Publishing v. Newspaper Guild of Wilkes–Barre, Local 120,* 647 F.2d 372, 382 (3d Cir.1981) (International Union could not be held liable for breach of collective bargaining agreement to which only local union was a party), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982); *Local Union No. 12405, District 50, United Mine Workers v. Martin Marietta Corporation,* 328 F.2d 945, 947–49 (7th Cir.1964) (local union could not enforce arbitration provisions when only International Union was party to those provisions), *cert. denied,* 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 87 (1964); *Walters v. Roadway Express, Inc.,* 400 F.Supp. 6, 14 (S.D.Miss.1975) (International Union not a party to collective bargaining agreement in which only Local Union was designated as "exclusive bargaining agency"), *aff'd in part, rev'd in part on other grounds and remanded in part,* 557 F.2d 521 (5th Cir.1977).

### B. *Apparent Authority*

■ HSA's sole theory for asking this court to bind the International Union to the arbitration provision of HSA's collective bargaining agreement with Local 113 is that the International Union, by its conduct, invested Local 113 with the apparent authority to bind the International to the agreement.[4] Apparent authority is an accepted theory under federal labor law. Section 301(b) of the Labor Management Relations Act of 1947 provides that "[a]ny labor organization which represents employees in an industry affecting commerce as defined in this chapter ... shall be

---

*tems v. Florida Softwear Services, Inc.,* 550 F.Supp. 1079, 1086–90 (D.Me.1982), *appeal dismissed,* 712 F.2d 724 (1st Cir.1983); alter egos, *Interocean Shipping Company v. National Shipping and Trading Corp.,* 523 F.2d 527, 539 (2d Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

**4.** In considering this theory the court ordinarily must not look at the merits of the underlying grievance. *See Peter Cooper Corporations v. United Electrical, Radio and Machine Workers of America, Local 1132,* 472 F.Supp. 692, 694–95 (E.D.Wis.1979). However, when a nonsignatory is attempting to enforce an arbitration provision, a court may have to inquire into the merits of the underlying grievance to determine whether the nonsignatory stands to receive a benefit from or prevent an action on the part of the signatory. *See McKinstry Company v. Sheet Metal Workers' International Association, Local Union # 16,* 859 F.2d 1382, 1384–85 n. 2 (9th Cir.1988). In the instant case, it is a signatory who is attempting to enforce an arbitration provision against a nonsignatory and the parties have not raised the issue of whether the International Union is a third-party beneficiary under the collective bargaining agreement, so the court will not inquire into the nature of the underlying grievance.

bound by the acts of its agents." 29 U.S.C. § 185(b). Subsection (e) provides that, "[f]or the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." 29 U.S.C. § 185(e).[5] These provisions have been construed as adopting common-law standards of agency. *See Carbon Fuel Company v. United Mine Workers,* 444 U.S. 212, 217, 100 S.Ct. 410, 414, 62 L.Ed.2d 394 (1979); *Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.,* 799 F.2d 1098, 1112 (6th Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987). The Fourth Circuit has explained that the purpose of these statutory provisions "was merely to apply the ordinary rules of the law of agency to labor organizations, notwithstanding resolutions on their part disclaiming responsibility for the action of persons who, in reality, are acting in their behalf." *United Construction Workers v. Haislip Baking Company,* 223 F.2d 872, 878 (4th Cir.), *cert. denied,* 350 U.S. 847, 76 S.Ct. 87, 100 L.Ed. 754 (1955).

The *Restatement (Second) of Agency* defines apparent authority as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other." *Restatement (Second) of Agency* § 8 (1958). "[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Restatement (Second) of Agency* § 27 (1958). In other words, an agent is

imbued with apparent authority to bind its principal if a third person could reasonably interpret acts or omissions of the principal as indicating that the agent has authority or acts on behalf of the principal. *Metco Products, Inc. v. National Labor Relations Board,* 884 F.2d 156, 159 (4th Cir. 1989). *See also Scheuer v. Central States Pension Fund,* 358 F.Supp. 1332, 1339 (E.D.Wis.1973) (ruling under Wisconsin law). Apparent authority is created only by representations of the principal to a third party. An agent cannot create apparent authority by its own actions or representations. *See Fennell v. TLB Kent Company,* 865 F.2d 498, 502 (2d Cir.1989); *Karavos Compania Naviera S.A. v. Atlantica Export Corporation,* 588 F.2d 1, 10–11 (2d Cir.1978). Therefore, in this case, any words or actions on the part of Local 113 are not determinative.

Generally, the existence and scope of agency relationships are factual determinations. *See National Labor Relations Board v. Donkin's Inn,* 532 F.2d 138, 141 (9th Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 179 (1976); *Scheuer,* 358 F.Supp. at 1339. In this case HSA cites the following facts which it believes support a finding that the International Union imbued Local 113 with the apparent authority to bind the International to the collective bargaining agreement:[6] the International Union took part in resolving an insurance coverage issue involving HSA which cleared the way for the negotiation of the collective bargaining agreement between Local 113 and HSA; the International Union's "National Agreement" provided the basis or model for the agreement between HSA and Local 113; the collective bargaining agreement has extraterritorial application in that it applies to all asbestos and toxic waste removal work performed in the United States, not just the four-county

---

5. Similarly, 29 U.S.C. § 152(13) provides that: "In determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

6. In raising this argument, HSA's position regarding the status of Local 113 is unclear. The defendant does not explain whether it believes that Local 113 was merely acting as an agent and that, therefore, the collective bargaining agreement binds only HSA and the International or whether it believes that both unions should be bound by the agreement and, consequently, should engage in tripartite arbitration.

area covered by the HSA–Local 113 agreement; and the agreement requires the payment of dues to Local 113 no matter where the employees of HSA work. *See* Statement in Opposition to Plaintiff's Motion for Summary Judgment and Brief in Support of Defendant's Cross–Motion for Summary Judgment at 5–8.

■ The International Union, in turn, maintains that there are no facts supporting a conclusion that it invested Local 113 with the apparent authority to enter into the collective bargaining agreement on its behalf. The International alleges: that it was not a party to the 1985 unfair labor practice proceeding or its settlement, *see* Affidavit of Alex Jordan at ¶ 2; that it did not participate in negotiating the 1988–91 collective bargaining .agreement between HSA and Local 113 and did not appoint Local 113 as its agent for the negotiations, *see Id.* at ¶ 3; that it did not sign the 1988–91 collective bargaining agreement, *see Id.* at ¶ 4; and that the International Union Constitution and the Uniform Local Union Constitution both provide that local unions affiliated with the International Union have no authority to act on behalf of the International Union.[7] *See* Affidavit of Arthur A. Coia at ¶¶ 2 & 3.

■ The burden of proving apparent authority rests on the party asserting that the act was authorized. *See Moreau v. James River–Otis, Inc.,* 767 F.2d 6, 10 (1st Cir.1985). The party upon whom this burden rests must prove: (1) that the putative principal has, by its words or conduct, placed an agent in such a situation that a person of ordinary prudence conversant with the business usages and nature of the particular business assumes that such agent has the authority to perform a particular act on behalf of the principal; and (2) that the party justifiably relied upon the appearance of authority and dealt with the agent based upon that assumption.[8] *See Bergstrom v. Sears, Roebuck and Company,* 532 F.Supp. 923, 933 (D.Minn.1982).

The *Restatement (Second) of Agency* explains that apparent authority can be created in a number of ways:

The information received by the third person may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents or other indicia of authority given by the principal to the agent, or from third persons who have heard of the agent's authority through authorized or permitted channels of communication. Likewise, ... apparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent. So, too, a person who permits another to do an act in such a way as to establish in a community a reputation for having authority to act, either by directing the agent so to represent, or by directing him to act and doing nothing to prevent the spread of such information by the

---

7. Very little weight can be ascribed to disclaimers of this nature. The First Circuit has held that a provision in a union's constitution that the local union cannot bind the International without the latter's written consent does not prohibit a finding of apparent authority. *See Moreau v. James River–Otis, Inc.,* 767 F.2d 6, 9–10 (1st Cir.1985). *See also Central States Southeast and Southwest Areas Pension Fund v. Kraftco,* 799 F.2d 1098, 1113 (6th Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987). The Fourth Circuit has explained that the purpose of 29 U.S.C. § 185(b) & (e) is "to apply the law of agency to labor organizations, notwithstanding resolutions on their part disclaiming responsibility for the action of persons who, in reality, are acting in their behalf."

*United Construction Workers v. Haislip Baking Company,* 223 F.2d 872, 878 (4th Cir.), *cert. denied,* 350 U.S. 847, 76 S.Ct. 87, 100 L.Ed. 754 (1955).

8. Some courts have also required the party claiming it relied upon the apparent authority of an agent to show that it made reasonable inquiries as to the ostensible agent's actual authority. *See, e.g., Karavos Compania Naviera S.A. v. Atlantica Export Corporation,* 588 F.2d 1, 10 (2d Cir.1978); *Irving Trust Company v. Nationwide Leisure Corporation,* 711 F.Supp. 166, 168–69 (S.D.N.Y.1989). In this case HSA does not claim that it made any such inquiries.

agent or by others, creates apparent authority with respect to those who learn of the reputation. Third persons who are aware of what a continuously employed agent has done are normally entitled to believe that he will continue to have such authority for at least a limited period in the future, and this apparent authority continues until the third person has been notified or learns facts which should lead him to believe that the agent is no longer authorized.

*Restatement (Second) of Agency* § 27 (1958).

■■■ HSA has not met its burden of producing sufficient evidence showing that the International Union conferred apparent authority on Local 113 in any of these ways. The record is devoid of evidence that the International Union made any direct verbal or written representations to HSA that Local 113 would be acting as its agent in negotiating and executing the collective bargaining agreement or that it actually appointed Local 113 as its bargaining agent.

HSA points out that the International Union took part in resolving HSA's insurance coverage problem in 1985. *See* Affidavit of John G. Schauer at ¶¶ 4–6. In that same year Local 113 filed a grievance against HSA and HSA eventually agreed to settle the grievance by entering into a collective bargaining agreement. *See Id.* at ¶ 5. But the "Memorandum of Understanding" reached by HSA and Local 113 pursuant to this settlement states only that HSA and Local 113 would enter into a collective bargaining agreement. *See Id.* at Exhibit C. The International Union is not mentioned as a proposed party and is not a signatory to the memorandum.

The International Union's involvement in the 1985 insurance matter is insufficient to show that there was any prior course of dealing between HSA and the International which would reasonably lead HSA to believe that Local 113 would be acting as the International's agent during the 1988 contract negotiations. *Cf. Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1113

(6th Cir.1986) (union representative had apparent authority to enter into side agreements to which the union, as principal, considered itself bound); *Scheuer v. Central States Pension Fund*, 358 F.Supp. 1332, 1340 (E.D.Wis.1973) (union's representative had apparent authority to promise pension benefits to employee when union, as principal, had followed practice of allowing representative to interpret pension benefit plan for beneficiaries).

Next, HSA complains that the International never disclosed that Local 113 would not be bargaining on its behalf. *See* Affidavit of John G. Schauer at ¶¶ 9 & 10. But the company has identified no custom or practice in the labor relations field which could lead an employer to believe that a local union generally acts as the agent for its international organization. To the contrary, courts have long recognized that international unions and their local affiliates are separate and autonomous and that this autonomy can be compromised only when statutory or applicable common-law rules of agency so indicate. *See United States v. International Union of Petroleum and Industrial Workers, AFL–CIO*, 870 F.2d 1450, 1453–54 (9th Cir.1989); *Fristoe v. Reynolds Metals Company*, 615 F.2d 1209, 1215 (9th Cir.1980); *Barefoot v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 424 F.2d 1001, 1004 (10th Cir. 1970); *York Division, Borg–Warner Corporation v. United Association of Journeymen and Apprentices of the Plumbers and Pipe Fitting Industry*, 473 F.Supp. 896, 900–01 (S.D.Fla.1979); *F.A. Villalba Company v. United Association of Journeymen and Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada, AFL–CIO*, 413 F.Supp. 94, 97 (W.D.Tex.1976). In this case, as noted above, the unions' constitutions disclaimed the local union's ability to act on behalf of the International without specific authorization.

■■■ HSA admits that in 1985, it was asked to enter into the "National Agreement" with the International Union. *See* Affidavit of John G. Schauer at ¶ 8 and

Exhibit D. However, HSA refused and chose to negotiate and execute a separate agreement with Local 113. When an employer chooses to negotiate and execute a separate agreement with a local union, it cannot later seek to enforce the grievance-arbitration mechanism of a multiemployer national agreement with the affiliated international union. *Cf. R.J. Distributing Company v. Teamsters, Chauffeurs & Helpers Local Union No. 627*, 771 F.2d 211, 214–15 (7th Cir.1985).

HSA points out that the "National Agreement" was used as a model for its agreement with Local 113. However, there are significant differences between the two documents. The contract between HSA and Local 113 does not provide for involvement by the International at any stage of the grievance procedure. *See* Complaint at Exhibit A, Article X. By contrast, the "National Agreement" provides for participation by the International Union at steps three and four of the grievance process. *See* Affidavit of John G. Schauer at Exhibit D, Article XIV.

Finally, HSA argues that, the fact that the bargaining agreement has extraterritorial effect mandates a finding of apparent authority. HSA reasons that the International Union must be a party to the contract because the agreement covers HSA's workers wherever they are working in the United States and not just in the four-county area covered by the contract with Local 113. Courts have allowed nonsignatory local unions to utilize arbitration agreements with employers when the agreements contemplate and intend that benefits be conferred on nonsignatory extraterritorial unions. *See, e.g., McKinstry Company v. Sheet Metal Workers' International Association, Local #16*, 859 F.2d 1382 (9th Cir.1988); *Local Union No. 36, Sheet Metal Workers' International Association, AFL–CIO v. Atlas Air Conditioning Company*, 722 F.Supp. 561 (E.D.Mo.1989). However, here it is the signatory employer who is attempting to enforce an arbitration provision against a nonsignatory international labor organization and the employer has made no showing that the International was meant to derive some benefit from the extraterritorial provisions of the contract. Based on this record, the extraterritorial provisions do not bolster HSA's position.

In sum, HSA has merely made a showing that it has had past dealings with the International Union. The defendant has not met its burden of producing sufficient evidence establishing that the International Union invested Local 113 with apparent authority to act as its bargaining agent or that HSA was justified in relying on what it claims to perceive as indicia of apparent authority. Consequently, defendant HSA's motion for summary judgment will be denied and plaintiff Laborers International Union's motion will be granted.

### C. Attorney Fees

In addition to seeking a declaratory judgment and an injunction, the International Union asks for an award of attorney fees should it prevail. The plaintiff has prevailed, but it has advanced no arguments for an award of fees in its moving papers. In general, attorney fees are not recoverable under federal law in the absence of statutory or contractual provisions or certain equitable considerations such as the bad faith of a party. *See Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters & Joiners of America*, 456 U.S. 717, 721, 102 S.Ct. 2112, 2114, 72 L.Ed.2d 511 (1982).

In this case the plaintiff alleges that its cause of action arises under 29 U.S.C. § 185. This statute does not provide for fee shifting. Courts have ruled that an award of fees under this section is discretionary. *See Fabricut, Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523*, 597 F.2d 227, 230 (10th Cir.1979). Moreover, this court has ruled that there is no contractual relationship between the International Union and HSA, so there is no contractual provision authorizing the payment of fees. Finally, having examined the record, this court does not find this case to be so extraordinary that attorney fees are warranted to further the interests of justice. Although the plaintiff prevailed, there is nothing in the record to indicate that HSA defended this matter or

asserted its counterclaim in bad faith or on frivolous grounds. Accordingly, the court will deny the plaintiff's request for attorney fees.

### ORDER

Because there are no material facts in dispute and because the plaintiff is entitled to judgment as a matter of law, the court ORDERS that plaintiff Laborers International Union of North America's Motion for Summary Judgment (filed June 13, 1989) IS GRANTED as to all claims set forth in the Complaint. *See* Federal Rule of Civil Procedure 56(c).

IT IS FURTHER ORDERED that defendant HSA Contractors, Inc.'s Cross–Motion for Summary Judgment (filed June 27, 1989) IS DENIED and that summary judgment is granted to the plaintiff as a matter of law on all the defendant's counterclaims.

IT IS FURTHER ORDERED that this action IS DISMISSED on its merits with each party to bear its own attorney fees.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter judgment as a separate document. This judgment shall provide that:

This action came on for hearing before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED AND THE COURT DECLARES that

(1) Plaintiff Laborers International Union of North America is not bound by the 1988–91 labor agreement between Laborers Local 113 and defendant HSA Contractors, Inc.

(2) The arbitrator in the pending grievance between Laborers Local No. 113 and defendant HSA Contractors, Inc. has no authority to bind plaintiff Laborers International Union of North America to the 1988–91 labor agreement between Local 113 and HSA.

IT IS FURTHER ORDERED AND ADJUDGED that

Plaintiff HSA Contractors, Inc. is permanently enjoined from attempting to submit to the grievance arbitration procedure set forth in the 1988–91 collective bargaining agreement between Laborers Local No. 113 and HSA the claim that plaintiff Laborers International Union of North America is a party to and/or is bound by the 1988–91 collective bargaining agreement because the International Union invested Local 113 with the apparent authority to bind the International Union to the provisions of that agreement.

IT IS FURTHER ORDERED AND ADJUDGED that

plaintiff HSA Contractors, Inc.'s Counterclaim IS DISMISSED on its merits.

IT IS FURTHER ORDERED that

this action IS DISMISSED on its merits with each party to bear its own attorney fees.

Done and Ordered.